BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

CHRISTINA McCALL (CABN 234139)
Assistant United States Attorney
    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    christina.mccall@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) Case No. CR 16-0424 JSW |
|---|---|
| Plaintiff, | ) [PROPOSED] DETENTION ORDER |
| v. | ) |
| DAVID JOHN TELLES, JR., | ) Hearing: October 26, 2016<br>) Time: 9:30 A.M.<br>) Court: Hon. Kandis A. Westmore |
| Defendant. | ) |

Defendant David John Telles, Jr. is charged in a three-count indictment with online exploitation and coercion, in violation of 18 U.S.C. § 2422(b); travel with intent to commit an illicit sexual act, in violation of 18 U.S.C. § 2423(b); and engaging in illicit sexual act in a foreign place, in violation of 18 U.S.C. § 2423(c). If convicted of Count 1, Telles faces a mandatory minimum sentence of 10 years in prison, and a statutory maximum sentence of life. If convicted of Counts 2 or 3, Telles faces a statutory maximum sentence of 30 years for each count.

Following arrest in this district, at the initial appearance, the United States moved for Telles's detention, pursuant to 18 U.S.C. §§ 3142(f). There is a presumption of detention because this case involves a child victim, pursuant to 18 U.S.C. §§ 3142(e)(3)(E). United States Pretrial Services wrote a detailed bail study for this case, and recommended that Telles be detained, because the risk of danger to another person and non-appearance could not be mitigated by conditions of release.

1    At the hearing, the Telles's parents, brother, teenage son, and family friend were present. Defense counsel argued that a bond, secured by a property in which Telles's parents have approximately $500,000 in equity, plus other conditions such as electronic monitoring and no computer usage, and no access to minors other than his son, would be sufficient to meet the requirements of the Bail Reform Act. Defense counsel proffered that Telles had no criminal history before this series of events (which resulted in multiple convictions in England), that he owned his own business, that Telles was a lifetime resident of the bay area, and that his parents would house him and that his mother could serve as a custodian. Defense counsel emphasized that the firearms in Telles's residence were legally purchased, and are no longer in the house. Defense counsel proffered that Telles was confused about the deportation flight process, and wanted to expedite his return to the United States. Defense counsel proffered that Telles wanted to self-surrender if he was charged with an offense, and that Telles's family had already contacted the Federal Public Defender's office prior to indictment, anticipating potential charges.

The government proffered that the serious charges provide an incentive for Telles not to make future court dates. The government summarized Telles's conduct in the case, and emphasized that defendant used smartphone applications and phone calls to groom a 14-year-old victim for sexual activity for some time. The government also proffered that Telles initially pretended to be a 14-year-old boy, and sent photos of his own son to the victim. The government proffered that Telles used his parents' financial accounts without their knowledge or consent to purchase plane tickets to England, travel insurance, rent a car in England, and pay for a hotel. Telles obtained an expedited passport the day before his flight, and purchased an engagement ring for the victim the day before leaving for England. The government proffered that Telles believed the false story the victim told him (when she realized that Telles was actually 38 and was really coming to meet her, as a way of avoiding sex with Telles) about being sexually assaulted by her teacher and potentially other people. The government proffered that rather than report the alleged sexual assault to authorities in England, Telles flew to England and engaged in a variety of sexual acts with the 14-year-old victim. The government proffered that the victim snuck out of her house, and Telles picked her up on a rural road late at night, and took her to two different hotel rooms, with her parents not knowing where she was for two days. The

[PROPOSED] DETENTION ORDER
CR 16-0424 JSW                                             2

government proffered that the victim said she told Telles she did not want to engage in sex for the first five minutes, but Telles was so persistent, she eventually stopped protesting.  The government proffered that prior to his arrest, Telles told the victim his life would be ruined if the police found out what happened, and he would lose his children.  Telles told the officer transporting him to jail that the victim would deny being in the hotel with him.  The government indicated that DNA evidence linked Telles's bodily fluids to the victim's underwear, and DNA evidence linked the victim's genetic material to a used condom from Telles's hotel room.  The government stated that Telles's house on the morning of June 18, 2014 was in terrible condition, with firearms and pornographic video discs in plain view, not secured.  Telles's house's back door was wide open on that morning, and the house was so dirty that agents needed to rotate outside to breathe while executing a search warrant.  The government stated that Telles told a British deportations officer that he lived in Puerto Rico and wanted to fly there instead of his flight back to the bay area, and the officer found this request so unusual that she contacted the United States embassy in London to report it.

      The Court finds that Telles poses a substantial risk of non-appearance at court proceedings, given Telles's request to re-route his deportation flight to Puerto Rico instead of Oakland.  The nature and circumstances of the offense, as proffered by the government, weigh very heavily in favor of detention.  Additionally, the evidence proffered is strong, which also favors detention (although not the most important factor in the Court's analysis).  The Court is concerned that Telles has mental health issues that need to be addressed.  The Court is concerned that Telles's request to be diverted to Puerto Rico instead of California indicates a risk of flight.  If Telles were to reside with his teenage son, it would be difficult for him to avoid all contact with other minors.  The Court is also concerned about the firearms that Telles possessed, although they were originally purchased lawfully, because they were apparently not safely stored in his residence, and the current location of the firearms is unclear.  The Court finds that the government has met its burden to show that Telles should be detained as both a danger to another person and a risk of non-appearance at future court proceedings.  The Court finds that a property bond, and the other conditions recommended by defense counsel are not sufficient to overcome these risks.

## ORDER

Telles is ordered detained as no condition or combination of conditions in 18 U.S.C. § 3142(c) will reasonably assure the appearance of Telles and safety of the community as required.

Telles is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. See 18 U.S.C. § 3142(i)(2). Telles must be afforded a reasonable opportunity to consult privately with counsel. See 18 U.S.C. § 3142(i)(3). On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Telles to the United States Marshal for a court appearance. See 18 U.S.C. § 3142(i)(4).

IT IS SO ORDERED.

DATED: 10/28/16

*Kandis Westmore*
HON. KANDIS A. WESTMORE
United States Magistrate Judge