PAGES 1 - 64

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. CR-16-0424 JSW |
| | ) | |
| VS. | ) | TUESDAY, JUNE 18, 2019 |
| | ) | |
| DAVID JOHN TELLES, JR., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | **SENTENCING** |
| DEFENDANT. | ) | |
| _____ | ) | REDACTED |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**      DAVID L. ANDERSON, ESQUIRE
                        UNITED STATES ATTORNEY
                        1301 CLAY STREET, SUITE 340S
                        OAKLAND, CALIFORNIA  94612
                  BY:  CHRISTINA MCCALL,
                        JONAS LERMAN,
                        ASSISTANT UNITED STATES ATTORNEYS


**FOR DEFENDANT:**      MICHAEL STEPANIAN, ESQUIRE
                        JENNIFER L. NAEGELE, ESQUIRE
                        819 EDDY STREET
                        SAN FRANCISCO, CALIFORNIA 94109


**ALSO PRESENT:**       KAR MAR, PROBATION OFFICER

**REPORTED BY:**        DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                        OFFICIAL COURT REPORTER


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | <u>TUESDAY, JUNE 18, 2019</u>                    1:10 P.M. |
| 2 | P R O C E E D I N G S |
| 3 | O0O |
| 4 | **THE CLERK:**  CALLING CASE NUMBER 16-424 UNITED STATES |
| 5 | VERSUS DAVID JOHN TELLES. |
| 6 | COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE YOUR |
| 7 | APPEARANCES. |
| 8 | **MS. MCCALL:**  GOOD AFTERNOON, YOUR HONOR.  CHRISTINA |
| 9 | MCCALL AND JONAS LERMAN FOR THE UNITED STATES. |
| 10 | **THE COURT:**  GOOD AFTERNOON. |
| 11 | **MR. STEPANIAN:**  GOOD AFTERNOON, YOUR HONOR. MICHAEL |
| 12 | STEPANIAN AND JEN NAEGELE FOR DAVID TELLES WHO IS PRESENT AND |
| 13 | IN CUSTODY. |
| 14 | **THE COURT:**  GOOD AFTERNOON. |
| 15 | **PROBATION OFFICER:**  GOOD AFTERNOON, YOUR HONOR. |
| 16 | KAREN MAR WITH PROBATION. |
| 17 | **THE COURT:**  GOOD AFTERNOON. |
| 18 | BEFORE WE -- YOU CAN BE SEATED, MS. MAR. |
| 19 | BEFORE WE BEGIN, I HAVE A PRELIMINARY MATTER. |
| 20 | FIRST, I WANT TO THANK COUNSEL ON BOTH SIDES FOR DOING A |
| 21 | THOROUGH JOB IN THEIR SENTENCING MEMORANDA INCLUDING THE |
| 22 | RESPONSIVE BRIEFING THAT THE COURT ORDERED WHICH WAS VERY |
| 23 | HELPFUL.  AND THROUGHOUT THE LIFE OF THE CASE, THE BRIEFING |
| 24 | HAS BEEN VERY EXEMPLARY AND HELPFUL TO THE COURT IN THIS VERY |
| 25 | DIFFICULT CASE. |

1       THE FIRST ISSUE BEFORE I BEGIN THE FORMAL SENTENCING

2   PROCEEDINGS, IS THE QUESTION OF THE MOTION BY THE DEFENSE,

3   FURTHER MOTION FOR A COMPETENCY HEARING FOR MR. TELLES.

4       THE COURT WILL DENY DEFENSE'S RENEWED MOTION FOR A

5   COMPETENCY EVALUATION.  IN ORDER TO GRANT A MOTION FOR A

6   COMPETENCY EVALUATION, THE COURT MUST HAVE A GENUINE DOUBT AS

7   TO MR. TELLES'S COMPETENCY.  TO BE CLEAR, THE COURT MUST

8   EXAMINE WHETHER NEW INFORMATION CREATES A DOUBT AS TO

9   MR. TELLES'S COMPETENCY, NOT WHETHER HE IS COMPETENT OR

10  INCOMPETENT.

11      AND THAT IS *UNITED STATES VERSUS DRYER*, D-R-E-Y-E-R, 705

12  F.3D 951 AT 961 DECIDED BY THE NINTH CIRCUIT IN 2013.

13      THE DEFENSE HAS ARGUED THAT MR. TELLES'S REFUSAL TO

14  COOPERATE WITH THE PROBATION OFFICER, OR THE PSYCHIATRIST THE

15  DEFENSE HIRED FOR SENTENCING, INSTRUCTION TO HIS FAMILY TO

16  REFUSE TO COOPERATE WERE THE PROBATION OFFICER OR TO SUBMIT

17  LETTERS OF SUPPORT, HIS ANNOUNCEMENT IN COURT THAT HE IS

18  WILLING TO ACCEPT THREE LIFE SENTENCES, AND THE DEFENSE

19  PSYCHIATRIST'S RECENT EVALUATION AND REPORT SHOW THAT

20  MR. TELLES IS INCOMPETENT ACCORDING TO THE DEFENSE.  THE

21  DEFENSE ARGUES THAT THE QUOTE-UNQUOTE "ONLY" EXPLANATION FOR

22  MR. TELLES'S CONDUCT IS THAT HE IS MENTALLY DISTURBED.

23      THE COURT DISAGREES.  NONE OF THIS NEW INFORMATION RAISES

24  A GENUINE DOUBT AS TO MR. TELLES'S COMPETENCE.  MR. TELLES'S

25  HIS REFUSAL TO COOPERATE PRE-SENTENCE PHASE IS MERELY A

1    VARIATION UPON HIS EARLIER BEHAVIOR IN THIS CASE, GAMESMANSHIP

2    DESIGNED TO DISRUPT AND DELAY.  MR. TELLES'S POST-CONVICTION

3    PRACTICES ARE ENTIRELY CONSISTENT WITH HIS PRE-CONVICTION

4    BEHAVIOR, WHICH THE COURT HAS BEFORE CONCLUDED DID NOT MERIT A

5    COMPETENCY HEARING.

6        MOREOVER, IN THE COURT'S EXPERIENCE, IT IS NOT UNCOMMON

7    FOR DEFENDANTS TO REFUSE TO COOPERATE WITH PROBATION SERVICES.

8    DEFENDANTS BEHAVE THIS WAY FOR A VARIETY OF REASONS, INCLUDING

9    A BELIEF THAT A FAILURE TO COOPERATE WILL DELAY SENTENCING

10   INDEFINITELY, FRUSTRATE WITNESSES OR THE COURT, OR AT LEAST

11   GUM UP THE SYSTEM.

12       THERE'S NOTHING BEFORE THE COURT TO SUGGEST THAT

13   MR. TELLES'S REFUSAL TO COOPERATE WITH HIS ADVOCATES OR WITH

14   PROBATION AFTER HE WAS CONVICTED IS DUE TO A MENTAL ILLNESS.

15   EVEN THE DEFENSE PSYCHIATRIST DR. COLES WAS UNABLE TO REACH A

16   DIAGNOSIS.

17       MR. TELLES'S POSITION ON THE AUTISM SPECTRUM HAS BEEN THE

18   SUBJECT OF NO INCONSIDERABLE AMOUNT OF DISCUSSION DURING THE

19   COURSE OF THE TRIAL.  MR. TELLES MAY VERY WELL BE ON THE

20   SPECTRUM.  THE DEFENSE HAS FAILED, HOWEVER, TO DEMONSTRATE

21   THAT THIS DISORDER MAKES IT IMPOSSIBLE FOR MR. TELLES TO

22   UNDERSTAND LEGAL PROCEEDINGS OR TO BE UNABLE TO ASSIST IN HIS

23   DEFENSE.

24       SEE *UNITED STATES VERSUS FRIEDMAN* 366 F.3D, 975 AT 980

25   DECIDED BY THE NINTH CIRCUIT IN 2004, WHICH QUOTES 18 U.S.

CODE SECTION 4241(D), WHICH HOLDS THAT THE DISTRICT COURT
PROPERLY FOUND THE DEFENDANT INCOMPETENT WHERE HE WAS ABLE TO
UNDERSTAND THE PROCEEDINGS BUT NOT CAPABLE OF ASSISTING
PROPERLY IN HIS DEFENSE.

QUOTE:  "A DEFENDANT MUST PRESENT STRONG MEDICAL EVIDENCE
OF A SERIOUS MENTAL DISEASE OR DEFECT BEFORE A GENUINE DOUBT
ABOUT COMPETENCY WILL ARISE.  EVEN THEN, IT WOULD NOT BE ERROR
FOR THE COURT TO HOLD A COMPETENCY HEARING UNLESS THE
DEFENDANT ALSO ESTABLISHED A CAUSAL CONNECTION BETWEEN THE
MENTAL DISEASE OR DEFECT AND HIS INABILITY TO UNDERSTAND THE
PROCEEDINGS", UNQUOTE.

THE COURT WAS THERE CITING *UNITED STATES VERSUS NEAL*,
N-E-A-L, 776 F.3D 645 AND THEN 655 AT 56 DECIDED BY THE NINTH
CIRCUIT IN 2015.

AS THIS COURT HAS OBSERVED ON MULTIPLE OCCASIONS,
MR. TELLES HAS BEEN COGENT AND THOUGHTFUL WHEN DISCUSSING THE
LAW AND HOW THE LAW APPLIES IN THIS CASE.  THEREFORE, THE
DEFENSE'S MOTION FOR A COMPETENCY HEARING IS DENIED.

NOW, BEFORE THE COURT BEGINS THE SENTENCING PROCEEDINGS,
THE COURT WOULD LIKE TO HEAR WHETHER OR NOT THE VICTIM IN THIS
CASE, WHO WE HAVE BEEN IDENTIFYING AS T.B., WISHES TO -- IS
PRESENT AND WISHES TO BE HEARD BY THE COURT -- BY THE COURT.

**MS. MCCALL:**  THANK YOU FOR OFFERING THAT, YOUR HONOR.
WE HAD A TICKET FOR HER.  SHE WAS PLANNING TO COME, BUT I
LEARNED LATE SATURDAY THAT SHE FELT EMOTIONALLY OVERWHELMED BY

1    THIS PROCEEDING AND DID NOT FEEL ABLE TO COME, BOARD THAT

2    FLIGHT.

3              **THE COURT:**  ALL RIGHT.  BUT SHE UNDERSTOOD THAT SHE

4    HAD THE RIGHT TO DO SO?

5              **MS. MCCALL:**  DEFINITELY, YOUR HONOR.

6              **THE COURT:**  THE COURT HAS REVIEWED THE PLEADINGS IN

7    THIS CASE AND THE VARIOUS MEMORANDA, INCLUDING THE MOST RECENT

8    ONES, AND SO I'M GOING TO START OFF BY DETERMINING THE

9    APPROPRIATE APPLICABLE GUIDELINE RANGE AS SET FORTH IN *UNITED*

10   *STATES VERSUS CARTY*, C-A-R-T-Y, AT 520 F.3D 984 AT 991 DECIDED

11   BY THE NINTH CIRCUIT IN 2008.

12        JUST SO THE PARTIES KNOW THE PROCEDURE THAT I'M GOING TO

13   FOLLOW, AFTER THE COURT SETS FORTH ITS RULINGS ON THE

14   APPLICABLE GUIDELINE RANGE, THE COURT WILL GIVE MR. TELLES AN

15   OPPORTUNITY TO ALLOCUTE OR SPEAK TO THE COURT ABOUT

16   SENTENCING.  AFTER HE HAS ALLOCUTED, TO THE EXTENT HE CHOOSES

17   TO DO SO, THE COURT WILL IMPOSE SENTENCE AND SET FORTH ITS

18   ANALYSIS OF THE 3553(A) FACTORS.

19        SO, THE COURT NOW BEGINS ITS CALCULATION.  IT IS

20   UNDISPUTED THAT MR. TELLES'S CRIMINAL HISTORY CATEGORY IS I.

21   AND THE PARTIES HAVE NOT DISPUTED THAT THE BASE OFFENSE LEVEL

22   FOR THE OFFENSES FOR WHICH HE WAS CONVICTED IS 28.

23        MR. TELLES DOES NOT DISPUTE THE APPLICATION OF THE

24   FOLLOWING ENHANCEMENTS:  A SPECIFIC OFFENSE CHARACTERISTIC OF

25   MISREPRESENTING HIS IDENTITY, UNDER GUIDELINE SECTION

1    2G1.3(B)(2)(A), WHICH YIELDS AN ADJUSTMENT OF PLUS TWO, THE

2    SPECIFIC OFFENSE CHARACTERISTIC OF COMMITTING A SEX ACT ON A

3    MINOR VICTIM, AND THAT'S GUIDELINE SECTION 2G1.3(4)(A), WHICH

4    AMOUNTS TO A PLUS TWO IN THE CALCULATION.

5        THE COURT WILL THEREFORE APPLY THESE ENHANCEMENTS.  THE

6    COURT WILL NOW ADDRESS MR. TELLES'S DISPUTES REGARDING THE

7    OTHER ENHANCEMENTS.

8        THE FIRST ONE IS THE POTENTIAL ENHANCEMENT FOR OBSTRUCTION

9    OF JUSTICE UNDER GUIDELINE SECTION 3C1.1.

10       THE PROBATION OFFICER RECOMMENDS AND THE GOVERNMENT ASKS

11   THAT THE COURT IMPOSE A TWO-POINT ENHANCEMENT UNDER THIS

12   BEFORE-MENTIONED GUIDELINE WHICH PROVIDES FOR ENHANCEMENTS IF

13   A DEFENDANT HAS WILLFULLY OBSTRUCTED OR IMPEDED OR ATTEMPTED

14   TO OBSTRUCT OR IMPEDE THE ADMINISTRATION OF JUSTICE WITH

15   RESPECT TO THE INVESTIGATION, PROSECUTION, OR SENTENCING OF

16   THE OFFENSE OF CONVICTION.

17       THE COURT DISAGREES WITH THE DEFENDANT'S ARGUMENT THAT THE

18   OBSTRUCTION OF JUSTICE ENHANCEMENT IS NOT SUPPORTED BY THE

19   FACTS.  EVIDENCE WAS ADDUCED AT TRIAL THAT MR. TELLES

20   ENCOURAGED T.B., THE MINOR VICTIM, TO KEEP SILENT ABOUT WHAT

21   HAPPENED.  MR. TELLES TOLD HER THAT IF SHE REVEALED WHAT

22   HAPPENED, HE WOULD GO TO PRISON AND HIS CHILDREN WOULD BE

23   ABANDONED, AND IT WOULD BE T.B.'S FAULT.

24       MR. TELLES ALSO TOLD T.B. THAT IN PRISON, HE MIGHT

25   REINJURE HIS HERNIA, WHICH WOULD KILL HIM.  HE STRESSED TO HER

1    THAT HIS DEATH WOULD ALSO BE HER FAULT.  HE TOLD HER THIS

2    WOULD MAKE HER A QUOTE, "MURDERER", UNQUOTE.  MR. TELLES ALSO

3    TOLD T.B. THAT SHE WOULD GO TO PRISON FOR LYING ABOUT HER AGE.

4        WHEN HER FATHER WAS LOOKING FOR MR. TELLES AND T.B.,

5    MR. TELLES DISCOURAGED THE VICTIM FROM COMMUNICATING WITH HER

6    FATHER OR TELLING HIM WHERE THEY WERE.

7        LEADING UP TO AND DURING TRIAL, MR. TELLES REPEATEDLY

8    ENCOURAGED MEMBERS OF HIS FAMILY, WHO WERE POTENTIAL

9    WITNESSES, NOT TO COOPERATE WITH HIS ATTORNEYS.  MR. TELLES

10   REFUSED TO COOPERATE WITH A COURT-ORDERED MENTAL HEALTH

11   EXAMINATION BY THE GOVERNMENT'S EXPERT AND REFUSED TO CHANGE

12   INTO CIVILIAN CLOTHES HIS FAMILY BROUGHT HIM TO WEAR ON THE

13   FIRST DAY OF JURY SELECTION.

14       SEE *UNITED STATES V. BONNETT*, B-O-N-N-E-T-T, 872 F.3D,

15   1045 AT 1047 DECIDED BY THE NINTH CIRCUIT IN 2017 IN WHICH THE

16   REFUSAL TO PARTICIPATE IN COURT-ORDERED TESTING, ACCORDING TO

17   THE CIRCUIT, CAN SUPPORT OBSTRUCTION OF JUSTICE ENHANCEMENT.

18       MR. TELLES THEN FEIGNED UNRESPONSIVENESS FOR SEVERAL DAYS

19   DELAYING THE TRIAL.  AFTER TWO DAYS OF EVIDENTIARY HEARING,

20   THE COURT FOUND BY A PREPONDERANCE OF THE EVIDENCE THAT

21   MR. TELLES WAS MALINGERING.

22       *UNITED STATES VERSUS ARMSTRONG*, 620 F.3D 1172 AT 1177

23   CITED BY THE NINTH CIRCUIT IN 2010 WHICH HELD THAT THE

24   PREPONDERANCE OF THE EVIDENCE STANDARD IS APPROPRIATE FOR

25   OBSTRUCTION OF JUSTICE ENHANCEMENT.  THAT'S *BONNETT* -- ALSO

1    CITING *BONNETT* AT 1047 IN WHICH THE COURT STATED THAT

2    MALINGERING MAY SUPPORT AN OBSTRUCTION OF JUSTICE ENHANCEMENT.

3        ONCE THE COURT RULED THAT MR. TELLES HAD VOLUNTARILY

4    ABSENTED HIMSELF UNDER RULE 43, AND BEGAN THE TRIAL IN

5    ABSENTIA, MR. TELLES ROUSED HIMSELF AND RETURNED TO COURT.

6        LATER DURING THE TRIAL, AS T.B. LEFT THE WITNESS STAND,

7    MR. TELLES PRETENDED TO FAINT.  WHILE THIS ACTION MAY NOT HAVE

8    BEEN CALCULATED TO DISRUPT THE VICTIM'S TESTIMONY PER SE, THE

9    COURT CONCLUDED AT THE TIME AND STILL BELIEVES NOW THAT

10   MR. TELLES'S FEIGNED FAINTING WAS A CALCULATED MANEUVER TO

11   DISRUPT THE PROCEEDINGS AND POLLUTE THE RECORD.

12       MR. TELLES FEIGNED UNRESPONSIVENESS AGAIN THE NEXT DAY,

13   BUT AFTER BEING EXAMINED, CHOSE TO GO TO COURT INSTEAD OF THE

14   HOLDING -- OF THE COURT'S -- THE HOLDING FACILITY AT THE

15   MEDICAL WING OF THE JAIL.

16       THE COURT IS UNPERSUADED BY THE DEFENDANT'S ARGUMENT THAT

17   THIS BEHAVIOR WAS PART OF A MISGUIDED EFFORT TO AVOID BEING

18   PRESENT AT COURT -- DURING TRIAL.  THE COURT IS FULLY

19   CONVINCED THAT MR. TELLES'S MANIPULATIVE AND DEVIOUS BEHAVIOR

20   WAS DESIGNED TO DISRUPT AND DELAY THE TRIAL.

21       THE COURT IS ALSO UNPERSUADED BY THE DEFENSE'S ARGUMENT

22   THAT MR. TELLES'S OBSTRUCTIONIST BEHAVIOR SHOULD NOT BE

23   COUNTED BECAUSE IT WAS UNSUCCESSFUL.  THERE IS NO AUTHORITY

24   BEFORE THE COURT TO SUGGEST THAT THE APPLICABILITY OF THIS

25   ENHANCEMENT DEPENDS ON WHETHER THE DEFENDANT'S OBSTRUCTION OF

1    JUSTICE IS EFFECTIVE.

2        FINALLY, THE COURT IS UNPERSUADED BY THE DEFENSE'S

3    ARGUMENT THAT MR. TELLES'S OBSTRUCTIONIST ANTICS STEM FROM HIS

4    AUTISM SPECTRUM DISORDER, OR ASD, OR FROM ANOTHER MENTAL

5    DEFECT.  THE COURT HAS ALREADY EXPLAINED WHY IT HAS NO QUALMS

6    ABOUT MR. TELLES'S COMPETENCY, AND THE COURT NEED NOT REVISIT

7    ITS FINDINGS FROM THE TRIAL REGARDING THE SAME.

8        THE COURT AGREES WITH THE DEFENSE THAT MR. TELLES'S

9    BEHAVIOR DURING THE TRIAL WAS, AS THEY'VE CALLED IT,

10    SELF-DESTRUCTIVE, BUT THE COURT DISAGREES THAT THESE

11    SELF-DESTRUCTIVE TENDENCIES WERE BORN OF A MENTAL DISEASE OR

12    DEFECT.  RATHER THESE TACTICS WERE PART AND PARCEL OF

13    MR. TELLES'S DELIBERATE EFFORTS TO DERAIL THE PROCEEDINGS,

14    DISCOURAGE WITNESS PARTICIPATION, AND CREATE A MISTRIAL.

15        THE COURT NEED NOT ADDRESS MR. TELLES'S REQUEST TO QUOTE,

16    "REROUTE", UNQUOTE HIS FLIGHT FROM THE U.K. TO PUERTO RICO OR

17    OTHER SUNDRY FACTS ARTICULATED IN THE GOVERNMENT'S MEMO.  THE

18    BEHAVIOR THE COURT HAS ITEMIZED TODAY IS MORE THAN SUFFICIENT

19    TO CONVINCE THE COURT THAT IT IS APPROPRIATE TO APPLY THE

20    TWO-POINT OBSTRUCTION OF JUSTICE ENHANCEMENT.

21        THE NEXT ENHANCEMENT THAT THE COURT CONSIDERS THAT IS

22    DISPUTED BY -- OR ADJUSTMENT THAT IS DISPUTED BY MR. TELLES IS

23    THE USE OF A COMPUTER UNDER UNITED STATES SENTENCING GUIDELINE

24    SECTION 2G1.3(B)(3)(A).

25        THE PROBATION OFFICER RECOMMENDS AND THE GOVERNMENT ASKS

1    THAT A TWO-POINT ENHANCEMENT BE IMPOSED DUE TO USE OF A

2    COMPUTER.  THE DEFENSE ARGUES THAT APPLYING A COMPUTER

3    ENHANCEMENT TO MR. TELLES CONSTITUTES IMPERMISSIBLE DOUBLE

4    COUNTING.  THE COURT DISAGREES WITH THE DEFENSE.

5        DOUBLE COUNTING OCCURS WHEN A COURT APPLIES AN ENHANCEMENT

6    THAT DUPLICATES A NECESSARY ELEMENT OF THE UNDERLYING

7    CONVICTION OR WHEN A COURT APPLIES TWO ENHANCEMENTS THAT THE

8    GUIDELINES INTENDED TO MAKE NONCUMULATIVE.

9        SEE FOR THIS PURPOSE, *UNITED STATES VERSUS STOTERAU*,

10   S-T-O-T-E-R-A-U, 524 F.3D 988 AT 1,001 DECIDED BY THE NINTH

11   CIRCUIT IN 2008.

12       USE OF A COMPUTER IS ONLY ONE WAY IN WHICH A PERSON CAN

13   VIOLATE SECTION 2422(B).  THE LANGUAGE OF THE STATUTE

14   SPECIFICALLY MENTIONS QUOTE, "THE MAIL OR ANY FACILITY OR

15   MEANS OF FOREIGN COMMERCE", UNQUOTE OF WHICH THE INTERNET IS

16   ONLY ONE EXAMPLE.  SEE *UNITED STATES VERSUS KEIFER*,

17   K-E-I-F-E-R, 760 F.3D 926 AT 930 THROUGH 932 DECIDED BY THE

18   NINTH CIRCUIT IN 2014.

19       THE USE OF THE INTERNET IS THEREFORE NOT A CENTRAL ELEMENT

20   OF THE UNDERLYING OFFENSE.  MR. TELLES'S USE OF A COMPUTER

21   QUOTE, "DISTINGUISHED HIS OFFENSE FROM A RANGE OF POTENTIAL

22   SECTION 2422(B) VIOLATIONS", UNQUOTE.  SEE *UNITED STATES V.*

23   *BOWDEN*, B-O-W-D-E-N, 420 APPENDIX 907 AT 911 DECIDED BY THE

24   ELEVENTH CIRCUIT IN 2011.

25       SO THE COURT, THEREFORE, WILL APPLY THIS ENHANCEMENT.

1       THE NEXT ENHANCEMENT THAT IS DISPUTED IN THIS CASE IS THE

2   CHAPTER 4 ENHANCEMENT FOR REPEAT SEX OFFENDER UNDER GUIDELINE

3   SECTION 4B1.5(B)(1).

4       THE DEFENSE ALSO OBJECTS TO THE APPLICATION OF A

5   FIVE-POINT ENHANCEMENT FOR BEING A REPEAT AND DANGEROUS SEX

6   OFFENDER AGAINST MINORS.  THE ENHANCEMENT APPLIES WHEN THE

7   DEFENDANT QUOTE, "ENGAGED IN A PATTERN OF ACTIVITY INVOLVING

8   PROHIBITED SEXUAL CONDUCT", UNQUOTE.  AND THAT'S GUIDELINE

9   SECTION 4B1.5(B)(1).

10      THE GOVERNMENT ARGUES THAT MULTIPLE INCIDENTS OF

11  MR. TELLES'S SEXUAL ABUSE OF T.B. IN DIFFERENT LOCATIONS USING

12  DIFFERENT METHODS TO SEXUALLY ABUSE HER WARRANTS THE

13  FIVE-POINT INCREASE.  THE DEFENSE CONTENDS, HOWEVER, THAT

14  MR. TELLES'S ABUSE OF T.B., TAKING PLACE AS IT DID OVER A

15  CONTINUOUS TWO-DAY ENCOUNTER, CAN BE UNDERSTOOD AS A SINGLE

16  OCCURRENCE UNDER THE GUIDELINES.  THE DEFENSE POINTS OUT THAT

17  THIS ENHANCEMENT IS TYPICALLY APPLIED IN CASES WHERE A

18  DEFENDANT HAS ENGAGED IN REPEATED ACTS, SEX ACTS AGAINST

19  MINORS ACROSS MONTHS OR YEARS AND/OR AGAINST MULTIPLE VICTIMS.

20      THE APPLICABILITY OF THIS ENHANCEMENT PRESENTS A CLOSER

21  QUESTION THAN THE OTHER TWO CONTESTED ENHANCEMENTS.

22      IN THE COMMENTS TO THE SENTENCING GUIDELINES, A DEFENDANT

23  HAS ENGAGED IN A QUOTE, "PATTERN OF ACTIVITY", UNQUOTE

24  INVOLVED PROHIBITED SEXUAL CONDUCT IF QUOTE, "ON AT LEAST TWO

25  SEPARATE OCCASIONS", UNQUOTE THE DEFENDANT ENGAGED IN

1    PROHIBITED SEXUAL CONDUCT WITH A MINOR.  QUOTE, "AN OCCASION

2    OF PROHIBITED SEXUAL CONDUCT MAY BE CONSIDERED WITHOUT REGARD

3    TO WHETHER THE OCCASION OCCURRED DURING THE COURSE OF THE

4    INSTANT OFFENSE", UNQUOTE.

5         SEE ALSO *UNITED STATES VERSUS BROXMEYER*,

6    B-R-O-X-M-E-Y-E-R, 699 F.3D 265 AT 285 DECIDED BY THE SECOND

7    CIRCUIT IN 2012 WHEREIN THE COURT STATED QUOTE, "THE

8    DEFENDANT'S CONVICTION ON COUNT THREE CLEARLY PROVIDES ONE OF

9    THE TWO OCCASIONS OF PROHIBITED SEXUAL CONDUCT NECESSARY TO

10   ESTABLISH AS PATTERN OF ACTIVITY", UNQUOTE.

11        THE NINTH CIRCUIT HAS DEALT WITH QUESTIONS OF WHETHER

12   ABUSE OF ONE MINOR IS SUFFICIENT TO GIVE RISE TO THIS

13   ENHANCEMENT, ACCORDING TO THEM IT IS, BUT THE NINTH CIRCUIT

14   HAS APPARENTLY NOT ADDRESSED THE CASE WITH FACTS ANALOGOUS TO

15   THOSE AT HAND.  PUT MORE PLAINLY, THE NINTH CIRCUIT HAS NOT

16   CONFRONTED A CASE WHERE THE ENHANCEMENT HAS BEEN APPLIED TO OR

17   WHERE THE ENHANCEMENT HAS BEEN DEEMED APPROPRIATE FOR A

18   CIRCUMSTANCE WHERE MULTIPLE ACTS OF SEXUAL ABUSE OCCURRED

19   WITHIN THE SPAN OF A SINGLE, ALBEIT PROLONGED, ENCOUNTER SUCH

20   AS OCCURRED HERE.

21        THE FACTS OF THE CASE OF *UNITED STATES VERSUS FLEETWOOD*,

22   457 FEDERAL APPENDIX 591 AT 591 THROUGH '93 DECIDED BY THE

23   EIGHTH CIRCUIT IN 2012 ARE SIMILAR TO THE FACTS OF

24   MR. TELLES'S CASE.  IN *FLEETWOOD*, THE DEFENDANT COMMITTED

25   THREE INSTANCES OF PROHIBITED SEXUAL CONDUCT WHILE ON A ROAD

1    TRIP WITH THE VICTIM; IN OTHER WORDS, DURING A SINGLE

2    ENCOUNTER.  THE DEFENDANT ARGUED THAT THESE DISCRETE ACTS OF

3    ABUSE WERE NOT SUFFICIENT TO SHOW A REPEATED PATTERN OF

4    ACTIVITY BECAUSE THEY ALL OCCURRED ON THE SINGLE ROAD TRIP, A

5    PROLONGED ENCOUNTER.

6        THE EIGHTH CIRCUIT DISAGREED AND APPLIED THE ENHANCEMENT.

7    NOTABLY, THE TESTIMONY IN *FLEETWOOD* COMMITTED ADDITIONAL

8    SEXUAL ABUSE AFTER THE ROAD TRIP ENDED, BUT THE EIGHTH CIRCUIT

9    DETERMINED THAT THE OCCURRENCE OF DISCRETE INCIDENTS OF SEXUAL

10   ABUSE DURING A SINGLE ENCOUNTER, THE ROAD TRIP, WAS SUFFICIENT

11   TO APPLY THE ENHANCEMENT.

12       WHILE ACKNOWLEDGING THAT THIS ENHANCEMENT IS TYPICALLY

13   APPLIED TO CASES WHERE MULTIPLE VICTIMS OR A SINGLE VICTIM WHO

14   SUFFERS PROLONGED SEXUAL ABUSE OVER MANY ENCOUNTERS, THE COURT

15   RECOGNIZES THAT THIS ENHANCEMENT HAS NOT BEEN LIMITED TO SUCH

16   SITUATIONS.  THE COURT, THEREFORE, CONCLUDES THAT THIS

17   ENHANCEMENT MAY APPLY TO CIRCUMSTANCES WHERE THERE ARE TWO OR

18   MORE DISCRETE INCIDENTS OF SEXUAL ABUSE THAT OCCUR DURING ONE

19   ENCOUNTER.

20       ACCORDINGLY, THE COURT HAS DETERMINED THAT THIS

21   ENHANCEMENT, TOO, APPLIES.

22       THEREFORE, THE COURT, IN SUMMARY, CALCULATES THE ADJUSTED

23   CRIMINAL GUIDELINE CATEGORY AND LEVEL AS FOLLOWS:  BASE

24   OFFENSE LEVEL OF 28, MISREPRESENTING IDENTITY ENHANCEMENT,

25   PLUS TWO, COMMITTING A SEX ACT ON A MINOR ENHANCEMENT PLUS

TWO, OBSTRUCTION OF JUSTICE ENHANCEMENT PLUS TWO, USE OF

COMPUTER ENHANCEMENT PLUS TWO, CHAPTER 4 ENHANCEMENT REPEATED

OFFENDER PLUS FIVE.

THIS RESULTS IN A TOTAL OFFENSE LEVEL OF 41, WITH A

CRIMINAL HISTORY OF I THAT THE COURT HAS FOUND, AND A TOTAL

OFFENSE LEVEL OF 41.  THE GUIDELINE RANGE IN THIS CASE IS 324

TO 400 MONTHS.

AT THIS POINT THE COURT WILL GIVE MR. TELLES AN

OPPORTUNITY FOR ALLOCUTION, TO TALK TO THE COURT ABOUT

ANYTHING HE WOULD LIKE TO SAY ABOUT SENTENCING.

MR. TELLES, DO YOU HAVE ANYTHING TO SAY?

**THE DEFENDANT:**  SURE.

I'M ATTEMPTING TO UNDERSTAND AND ARTICULATE MR. TELLES'S

WISHES AND ASSIST HIM IN HIS NEEDED ACCOMMODATION.  YOU WOULD

NORMALLY SILENCE MR. TELLES BUT YOU ARE GOING TO LET HIM

CONTINUE TO TALK ONLY TO HURT ANY APPEAL ISSUES ON COMPETENCY

EVEN THOUGH I AM WRITING A MOTION OF APPEAL ON YOUR DENIAL OF

PRO PER ON NO GROUNDS, INCLUDING MR. TELLES'S WAIVER OF DELAY,

OF GROUNDS OF CHANGE OF COUNSEL FOR MR. TELLES OF NEW COUNSEL.

MR. TELLES WAS TO BE HOOKED UP TO A LIE DETECTOR TEST AND

GO OVER EVERYTHING FOR EIGHT HOURS TODAY AND EIGHT HOURS

TOMORROW.  IT HAS TAKE CONSIDERABLE EFFORT ON MY PART TO GET

MR. TELLES TO PARTICIPATE IN A STATEMENT THAT IS APPROPRIATELY

TIMED TO A FEW MINUTES AND REHEARSED THIS WITH HIM.  HE CAN

SAY -- SO HE CAN SAY ALL THE WORDS WITHOUT HIS LIE DETECTOR

```
 1    AND REVIEW OF EVIDENCE... EVIDENCE SUPPRESSED AND USED.

 2        HE WOULD LIKE TO SAY ONLY THAT HE IS A COFFEE BEAN AND

 3    THERE IS NOTHING YOU CAN DO TO HIM, AND HE WILL CONTINUE TO

 4    MAKE THE WORLD A BETTER PLACE.

 5        PLEASE GIVE HIM THREE LIFE SENTENCES THEN DOUBLE IT, THEN

 6    TRIPLE IT.  IT MATTERS NOT FOR HE KNOWS THE TRUTH, HIS

 7    CHILDREN KNOW THE TRUTH, XXXXX KNOWS THE TRUTH DEEP DOWN, AND

 8    MOST IMPORTANTLY GOD KNOWS THE TRUTH.  AND YOU ARE A

 9    MEANINGLESS MAN.

10        I HAVE TRIED TO REMOVE OR UNDERSTAND THIS, BUT IT IS

11    IMPORTANT TO MR. TELLES THAT HE IS A COFFEE BEAN.  HE WILL

12    ONLY SAY THAT THE ONE WHO MATTERS UNDERSTANDS IT.  WHILE

13    MR. TELLES'S LAST CONVERSATIONS TO THE COURTS WERE BETTER THAT

14    HELP WAS COLLEGE EDUCATED, AND MS. NAEGELE WAS GIVEN LOTS OF

15    THEIR NOTES AND LETTERS, AND MR. STEPANIAN -- STIPIANI (SIC)

16    DELIBERATELY DESTROYED THOSE, AND I DO NOT HAVE ALL OF THOSE

17    NOTES TO WORK WITH.

18        WE DO NOT CONSENT TO ANY OF THEIR LEGAL ARGUMENTS.  THEIR

19    CONDUCT IS NOT ONLY INEFFECTIVE, INCOMPETENT, IRRECONCILABLE

20    CONFLICTS HAVE RISEN TO A CRIMINAL LEVEL, SUBSTANTIATED BY

21    POLICE REPORTS.  THEY HAVE DELIBERATELY FAILED ALL

22    REPRESENTATION FOR EIGHT MONTHS AND WOEFULLY UNDERPREPARED

23    DOZENS AND DOZENS OF LEGAL MATTERS FOR SENTENCING.

24        AS ONE EXAMPLE, YOU ARE ADDING OBSTRUCTION OF JUSTICE

25    WHICH SUMS UP THIS CASE PERFECTLY.  READ AIRPORT APPLICATION.
```

1          DATED SEPTEMBER 25TH, 2016 TO MR. HATFIELD DUE TO FAMILY

2     AND FRIENDS MOVING SAN FRANCISCO IS AN OUTDATED AREA.  MY AREA

3     OF CHOICE IS SAN JUAN, PUERTO RICO, LUIZ (PHONETIC) SOMETHING,

4     ATLANTA, GEORGIA, HARTSFIELD-JACKSON INTERNATIONAL,

5     WASHINGTON, D.C. DULLES OR OREGON AND WASHINGTON STATE.

6          AS I SAID, SALT LAKE CITY WOULD HAVE BEEN FINE.  EVEN IF I

7     NEEDED TO CHANGE CITY OF DESTINATION, I SIMPLY WANT THE

8     FASTEST TICKET AVAILABLE AND DON'T WANT A LAYOVER TO SLOW THE

9     PROCESS DOWN.  ANY EAST COAST CITY WOULD HAVE BEEN FINE.

10          MR. TELLES DID EVERYTHING HE COULD TO WORK WITH THE

11     AUTHORITIES WHO LIED AND MANIPULATED HIM.  THIS LIST OF

12     AIRPORTS WAS THE U.K. PEOPLE HELPING THEIR AIRPORTS OF

13     VACATION.  THEIR HELP TRYING TO GET MR. TELLES HOME AS QUICKLY

14     AS POSSIBLE.  THIS SHOWS AS EXAMPLE OF THE REALITY OF TRUTH

15     AND FACTS VERSUS THE GOVERNMENT'S MANIPULATION OF DISTORTING

16     AND TWISTING OF EVIDENCE.

17          AND COUNSEL'S DELIBERATE ACTION AS SURROGATE PROSECUTORS

18     AND DELIBERATE REFUSAL TO USE BOTH THE EVIDENCE AND THE LAWS

19     TO DEFEND MR. TELLES.  THE LAW WHICH THESE LAWYERS FAIL TO

20     CITE.  MR. TELLES IS NOT SERVED AN INDICTMENT AND LEGALLY CAN

21     GO TO ANYWHERE HE CHOOSES WITHOUT OBSTRUCTION CHARGES.

22          BOTH THE CASE LAW AND THE APPLICATION WERE TOLD TO

23     STIPIANI.  AND ON TOP OF IT, IT'S CLEAR MR. TELLES WAS

24     DESPERATELY TRYING TO COME BACK TO HIS CHILDREN WHO LOST THEIR

25     FATHER ON THE 10-YEAR ANNIVERSARY OF MARJORIE'S LOSS.

1    WASHINGTON, D.C. IS HARDLY AVOIDING ARREST.  IS NOT -- ARREST

2    WHICH IS NOT HARDLY AVOIDING ARREST WHICH IS NOT SERVED BY

3    DELIBERATELY MISCONDUCT OF CONSTITUTIONAL VIOLATIONS OF

4    GOVERNMENT.  WASHINGTON, D.C. IS BOTH THE CAPITAL AND MORE

5    IMPORTANTLY ANABEL'S NEW HOME.

6         AND PRACTICE IS ALSO LEGAL... SOMETHING IS LEGAL.  U.S. --

7    OH.  PUERTO RICO IS ALSO LEGAL U.S. DESTINATION OF RETURN BY

8    BOTH COUNTRIES.  AND THE DEPUTY SAID THE FASTEST FLIGHTS EVERY

9    DAY FOR VACATION.  THAT IS ONE EXAMPLE OF HOW REALITY IS --

10   HOW YOUR REALITY IS A MISCARRIAGE OF JUSTICE OF A FACTUALLY

11   INNOCENT MAN.

12        MR. TELLES AND HIS CHILDREN ALL LOVE XXXXX AND EXPECTED A

13   LEGAL MARRIAGE TO A LEGAL ADULT.  YOU CLAIM HE IS MISTAKEN

14   ABOUT THE AGES OF MARRIAGE, YET YOU HAVE IN EVIDENCE TRISTON

15   AND XXXXX BOTH SENDING ALL THE RULES OF MARRIAGE.  THERE IS NO

16   IGNORANCE ON MR. TELLES'S PART.  ONLY COMPLETE FACTUAL

17   INNOCENCE AND MANDREA (PHONETIC) THE CORNERSTONE OF WESTERN

18   JUSTICE AND EVIDENCE.

19        APPOINTMENTS FOR -- AND IN EVIDENCE.  APPOINTMENTS FOR

20   IMMIGRATION LAWYERS FOR XXXXXXXXXAMERICAN CITIZENSHIP; YOU HAVE

21   SUPPRESSED XXXXX SAYING MY BOYFRIEND IS 38 LONG BEFORE A

22   SEPARATE PROFILE AND FICTIONAL CHARACTER PRETENDS TO BE 14.

23   AND CASE LAW IS CLEAR IT DOESN'T MATTER WHETHER IT IS

24   MR. TELLES OR AUSTIN TALKING TO THAT CHARACTER, IT IS A

25   SEPARATE PERSON AND CASE LAW IS CLEAR YOU CANNOT CHARGE

1    MR. TELLES FOR THOSE CONVERSATIONS OR PREJUDICE A TRIAL WITH

2    THEM WHEN IT IS CLEAR THAT CHARACTER COMMITS SUICIDE AND IS A

3    SEPARATE PERSON FROM XXXXX -- FROM THIS XXXXX.  SO THERE CAN

4    BE NO PLAN TO MEET FOR ILLICIT ACTIVITY WHICH A CHARACTER WHO

5    IS DEAD AND BURIED -- ILLICIT ACTIVITY WITH A CHARACTER WHO IS

6    DEAD AND BURIED.

7        FATHER -- FURTHER ARGUMENTS OF DEFENSE COUNSEL'S

8    INEPTITUDE AND GROUNDS FOR PRO PER AND MISTRIAL, IT IS CLEAR

9    THAT XXXXX, DAYS BEFORE MEETING MR. TELLES, IS CLEARLY STILL

10   PRETENDING TO BE AN ADULT QUOTING, I AM 27.  THIS CONVERSATION

11   CONNECTS DOWN TO THE SECOND WITH MR. TELLES ON A SHARED KIK

12   PLATFORM AND IPODS, TABLETS, AND PHONES, ALL OF WHICH -- ALL

13   OF WITH OTHER -- ALL WITH OTHER ACCOUNTS SUPPORTED BY

14   GOVERNMENT DOCUMENTS SAYING THAT THE OTHER STUFF HAS IPODS --

15   HAS CLASH OF CLANS AND KIK ON IT.

16       ALL THE OTHER ACCOUNTS SUPPORTED BY GOVERNMENTS.  LET'S

17   READ THE CONVERSATIONS AND SEE THE REALITY OF A MAN WHO

18   GENERALLY LOVED XXXXX.  AND TO QUOTE XXXXX, "HE WAS THE

19   KINDEST PERSON, MOST CARING, PERFECT BOYFRIEND.  HE WAS LIKE A

20   COUNSELOR BUT BETTER WHO HELPED ME FEEL BETTER FOR THE FIRST

21   TIME.  WE CHAT CLASH OF CLANS AND KIK."

22       5/24.  I AM 27.  A LONG CONVERSATION.  ONLY XXXXXXX IS

23   PRINTED OF HER TALKING TO THIS INKIES CHARACTER.  DOWN -- SHE

24   NEVER GIVES THE KIK ADDRESS.  IT'S CLEAR THAT I'M ON THIS.

25   THERE'S DOZENS OF KIK ACCOUNTS.  IT GOES LITERALLY TO THE

```
1   SECOND, TO THE MINUTE BACK TO THIS CONVERSATION ON KIK WITH

2   THE INKIES PERSON WHO GOES BY ALEXIS CAMACHO HAS ADDED YOU TO

3   THE CONVERSATION.  SHE CAN ONLY ADD ME IF I GAVE HER THE

4   ADDRESS IN THE KIK CONVERSATION -- IN THE CLASH OF CLANS

5   CONVERSATION BECAUSE ALL OF XXXXXXX CONVERSATIONS ARE PRINTED.

6   THERE IS LITERALLY NOT ONE SECOND DELAY IN IT.

7       THIS IS A RANDOM INTERNET PERSON FROM WHAT I REMEMBER.

8   IT'S SOMEBODY WANTING TO COMMIT SUICIDE.

9       XXXXX SAYS:  NO, PLEASE NEVER EVER SAY THAT.  PLEASE.

10      I SAY:  HI.

11      XXXXX SAYS:  PLEASE NEVER EVER COMMIT SUICIDE.  PLEASE, I

12  BEG OF YOU.

13      I SAY:  ALEXIS.

14      SHE SAYS:  OKAY.

15      I SAY:  CAN YOU CALL THE POLICE?  IF PEOPLE ARE HURTING

16  YOU, YOU NEED TO CALL.

17      NO, DON'T CALL.  I'LL JUST MOVE SOMEWHERE ELSE.

18      HOW OLD ARE YOU?

19      15.

20      XXXXX SAYS:  THAT'S NOT WHAT YOU SAID TO ME.

21      I SAY:  THEN YOU NEED HELP.

22      XXXXX SAYS:  BUT YOU NEED HELP.

23      I DON'T KNOW WHAT TO DO, THE RANDOM PERSON SAYS.

24      I SAY:  ALEXIS THIS IS NO GAME TO GET GIRLS.  ARE YOU

25  TELLING TRUTH OR LIES?
```

```
1        XXXXX SAYS:  ALEXIS, PUT YOUR SISTER ON FOR A SECOND.

2        XXXXX SAYS:  ALEXIS.

3        I SAY:  IF THIS IS REAL, THEN WE WILL HELP YOU.  IF YOU

4   ARE LYING, PLEASE STOP.  YOU CAN NEVER BE CRUELER IF YOU'RE

5   LYING.  THIS IS NOT SOMETHING TO LIE ABOUT.

6        I SAY:  PEOPLE HAVE HEARTS.  AND TO HELP AND FIND OUT IT

7   IS JUST A GAME WOULD JUST BE THE CRUELEST THING.  PLEASE TELL

8   THE TRUTH.  DO YOU NEED HELP?

9        XXXXX SAYS:  PLEASE, ALEXIS, I DON'T WANT TO BE PUSHY, BUT

10  I WANT TO HELP.  YOU JUST NEED TO BE HONEST.  YOUR AGE HAS

11  CHANGED.

12       XXXXX SAYS:  IF YOU ARE LYING, I CAN STILL HELP.  BECAUSE

13  I UNDERSTAND WHY PEOPLE LIE LIKE THIS.  THEY JUST NEED HELP

14  WHEN THEY ARE TRYING TO FIND THEMSELVES.  IF YOU'RE LIKE THAT,

15  I AM SORRY FOR YOU.  AND IT'S WEIRD THAT YOUR GROW GOES ON

16  LIKE THAT.  I AM NOT LYING.  THEN WE WILL HELP.  BUT YOU HAVE

17  TO CALL THE POLICE IF YOU ARE BEING HIT.  KILL ME PLEASE.

18       AND I SAY:  NO.

19       XXXXX SAYS:  NO, PLEASE STOP SAYING THAT.

20       I SAY:  YOU CAN GET THROUGH THIS.

21       I SAY:  WHAT ARE YOU DOING TO -- WHAT ARE THEY DOING TO

22  YOU?

23       XXXXX SAYS:  BUT YOU NEED TO TELL SOMEONE.  IT CAN GET

24  REALLY BAD AND YOU CAN BE SCARRED FOR LIFE AND NEVER BE ABLE

25  TO MOVE ON.
```

```
1      I SAID:  ALEXIS, WHY DON'T YOU WANT TO CALL?

2      I SAID:  LET'S START THERE.  WHY NOT GET HELP?

3      I SAY:  EVERYONE NEEDS HELP AT SOME POINT IN THEIR LIFE.

4      I SAY:  IT SOUNDS LIKE TODAY IS YOUR DAY.

5      XXXXX SAYS:  ALEXIS, PLEASE STOP DISAPPEARING.  WE CAN

6  ONLY HELP YOU IF YOU ARE READY.  I THINK YOU'RE READY.  YOU'RE

7  ASKING FOR HELP NOW.  SO WHY NOT ASK THE POLICE.  THEY WILL

8  MAKE SURE IT STOPS.

9      OKAY.  I AM CALLING --

10          THE COURT:  EXCUSE ME, MR. TELLES.  LET ME ASK YOU,

11 HOW MUCH MORE DO YOU HAVE OF THIS?

12          THE DEFENDANT:  IT IS ALMOST DONE.

13          THE COURT:  THANK YOU.

14          THE DEFENDANT:  YOU DON'T HAVE TO BE AFRAID, I SAY.

15     SHE SAYS:  OKAY -- HE SAYS:  OKAY.

16     I SAY:  GOOD JOB.  CAN YOU DO IT NOW?

17     XXXXX SAYS:  CHILD HELP LINE.  A LOT TO.  YOU GET YOUR OWN

18 POSTER BOARD FROM EVERYTHING YOU CAN DO.  ALWAYS CHAT TO

19 SOMEONE.

20     I SAY:  NOW IS A TIME.  CAN YOU TELL THEM TO HELP?

21 ALEXIS, PLEASE PUT YOUR SISTER BACK ON.  TELL THEM THAT THEY

22 ARE HURTING YOU.  YOU NEED TO HELP.

23     ALEXIS -- WHAT -- IT'S SOME RANDOM PERSON COMES ON.  WHAT

24 THE HELL DO YOU THINK INCREASE IT IS INKIES' SISTER.  I JUST

25 WANT TO SAY YOU HIT YOUR BROTHER.
```

1          AND IT GOES ON LIKE THAT.  WE CAN SKIP THAT.

2          THAT IS A REPRESENTATION OF MY CONVERSATION.  A

3     REPRESENTATION OF XXXXXXX CONVERSATION PRETENDING TO BE A

4     MATURE ADULT CARING FOR PEOPLE, AND MOST LIKELY ANOTHER FAKE

5     ONE OF HER CHARACTERS.

6          SO TO RECAP, XXXXX SAYS MR. TELLES IS 38 AT THE START.

7     AND AT THE END SHE IS STILL PRETENDING TO BE 27.  NOTED IN

8     BLACK AND WHITE ON 5/24/2014.

9          AND MR. TELLES'S CONVERSATION IS NOT SEXUAL OR ENTICING,

10    BUT KIND AND HELPFUL TO A 27-YEAR-OLD ADULT WHOSE PICTURE IS

11    OF AN ADULT MODEL TO LOOK LIKE MARJORIE, AND SHE TALKS OF

12    WORKING AND MAKING TIPS OFF OF BODY SHOTS AT A BEACH RESORT AS

13    IN EVIDENCE IN PHOTOS COUNSEL FAILED TO USE AND FAILED TO

14    GATHER MORE ELECTRONIC EVIDENCE.  BUT LET'S LOOK AT A FEW MORE

15    CHAT EXAMPLES.

16         XXXXX SAYING -- THIS IS MY SIDE.

17         WHEN DO YOU GET OFF?  WHICH IS NOT SEXUAL.

18         SHE SAYS:  WELL, I HAVE TO WORK UNTIL 8 P.M. TODAY, BUT I

19    HAVE A BREAK.  I WILL BE ON NOW FOR A BIT, 12-ISH AND 3-ISH.

20         I SAY:  OKAY, WE'LL FIGURE OUT A TIME.

21         SHE SAYS:  DID CONOR GO --

22         I SAY:  DID CONOR GO OR STAY?

23         SHE SAYS:  OKAY.  COOL.  HE STAYED.  SHE SENDS A PICTURE

24    BLACKED OUT OF AN ADULT MODEL.

25         SHE SAYS:  THIS IS JUST FOR YOU.  I TOOK IT LAST NIGHT

```
 1   WITH THE OTHER XXXXX.  SHE HAD TO.  SHE'S A WEIRDO.  PROBABLY

 2   JUST THE HORMONES MAKING HER FUNNY.  BUT SHE SAID I HAD TO

 3   SEND IT.  I LOVE IT.  HOT.  WITH THE RULE OF MARRIAGE AND US

 4   TALKING ABOUT ADOPTING THIS OTHER PERSON.  TWO ADULTS ADOPTING

 5   THE OTHER FAKE CHARACTER.

 6        NOW LET'S -- NOW AS DR. KELLAHER STATES, MR. TELLES'S

 7   AUTISM LEAVES HIM UNABLE TO UNDERSTAND LIES AND DECEPTIONS OR

 8   COMMIT LIES AND DECEPTIONS AND ONLY LITERAL INTERPRETATIONS OF

 9   WHAT HE'S TOLD.  AND THAT IS A LEGAL ADULT MARRIAGE.

10        FOR THE RECORD, MR. TELLES ALWAYS TAKES RESPONSIBILITY AND

11   FREELY SAY AFTER PROMISING TO TRISTON ON HIS DEATH BED,

12   ANOTHER FAKE CHARACTER IN EVIDENCE, TO MARRY XXXXX AND SAVE

13   HER.  HE DID PROPOSE AND THEY WERE ENGAGED.  THAT WAS TO A

14   27-YEAR-OLD ADULT.

15        MR. TELLES, AGAINST MY ADVICE, WILL ALSO SAY THAT AFTER

16   THEY WERE ENGAGED, XXXXX DID CHANGE HER AGE FROM 27 TO A

17   YOUNGER AGE.  STILL A LEGAL ADULT FOR A LEGAL MARRIAGE.

18        AND I WILL STATE FOR THE RECORD MR. TELLES'S VARIOUS

19   MENTAL HEALTH ISSUES CONTRIBUTED TO A COMPLETE MENS REA AND

20   INNOCENT OF ALL CRIMINAL CULPABILITY.

21        MR. TELLES DOES WORRY FOR XXXXX AND LOVE XXXXX, AND

22   WISHES... WISHES PUSHED -- WISHES SHE DIDN'T PUSH AND COERCE

23   HIM TO COME TO THE U.K. TO GET LEGALLY MARRIED WITH ALL THE

24   STORIES, BUT UNDERSTAND THE ABUSE SHE WAS -- BUT... BUT

25   UNDERSTAND THE ABUSE SHE WAS DEALING WITH IS WHY SHE WAS SO
```

1    DESPERATE TO RUN AWAY AGAIN.

2        MR. TELLES COMMITTED NO SEX ACTS, NO -- COMMITTED NO SEX

3    ACT OR ACTS WITH XXXXX IN THE FIRST PLACE.  AND IN THE SECOND

4    PLACE, EVEN IF SEX TOOK PLACE, THOSE ACTS MR. TELLES WOULD NOT

5    BE CRIMINALLY CULPABLE FOR AS MR. TELLES BELIEVED XXXXX TO BE

6    A LEGAL ADULT EVEN AFTER MEETING IN PERSON AS MR. TELLES'S

7    AUTISM AND VARIOUS MENTAL HEALTH ISSUES PREVENT NORMAL SOCIAL

8    UNDERSTANDING AS WELL AS IMPARED (PHONETIC) -- IMPAIRED

9    ABILITY TO CORRECTLY VIEW PHYSICAL APPEARANCES OR RECOGNIZE

10   PEOPLE.

11       AGAIN, IT IS EVIDENCED -- IT IS IN EVIDENCE.  NOT

12   MR. TELLES'S WORD THAT PROVES FACTUAL INNOCENCE.  CITING WEB

13   SEARCHES MONDAY AND TUESDAY NIGHT, MORNING AND NIGHT, FOR A

14   CHAPEL FOR A LEGAL MARRIAGE WITH THE RULES OF MARRIAGE CLEARLY

15   PRINTED.  AND HER -- AND HIM TELLING HER TO GET ALL OF HER

16   LEGAL PAPERS TO PROOF OF AGE.

17       TO MR. TELLES, XXXXXXX APPEARANCE WAS MUCH OLDER THAN

18   MARJORIE IN HER LATE -- IN HER TWENTIES -- WAS MUCH OLDER THAN

19   MARJORIE IN HER TWENTIES AND COMPETENT LAWYERS WOULD HAVE GOT

20   ALL THE ELECTRONICS RECORDS WHICH WOULD SHOW ALL THE CHATS AND

21   ALL -- ON ALL THE DEVICES SHOWING XXXXX KNEW... KNEW AND SAVED

22   MR. TELLES -- AND SAVED MR. TELLES AND MARJORIE'S PHOTOS.  AND

23   KNOWS MR. TELLES IS 38 YEARS OLD -- 38-YEAR-OLD MAN AND WAS

24   STILL IN LOVE WITH MARJORIE, AND USED A PROFILE PICTURE TO

25   RESEMBLE MARJORIE.

1    THESE ARE JUST A FEW EXAMPLES OF HOW MR. TELLES IS

2    FACTUALLY INNOCENT AND SHOULD BE APPLAUDED FOR TRYING TO HELP

3    AND FOR BEING A NIGHT IN SHINING ARMOR.  FOR A BARELY

4    FUNCTIONING MAN TO TRY SO HARD TO HELP A WOMAN HE LOVED, TO

5    OFFER LISA AND KARISA (PHONETIC) A SAFE HOME, TO BE WILLING TO

6    JOINTLY WILLINGLY ADOPT THE OTHER FAKE XXXXX CHARACTER WITH

7    THE ADULT XXXXX CHARACTER.

8         YOUR HONOR, YOU HAVE NO CONCEPT OF THE REALITY OF EVENTS

9    DUE TO THE DELIBERATE AND MALICIOUS ACTS OF MR. STIPIANI'S --

10             **MR. STEPANIAN:**  STEPANIAN.

11             **THE DEFENDANT:**  STEPANIAN CONDUCT.

12        YOU ARE IMPRISONING A MAN WHO HAS NEVER DONE ANYTHING

13   WRONG, A MAN WHO LOVED XXXXX, WHO LOVED HIS WIFE, WHO LOVES

14   HIS CHILDREN, ANABEL AND AUSTIN, CARED AND RAISED TWO CHILDREN

15   TO BE DRUG FREE AND ON SECOND HONORS AT GEORGETOWN AND

16   U.C.L.A. ON ACADEMIC SCHOLARSHIPS.  THE REALITY OF THE

17   SITUATION IS THE OPPOSITE OF ANYTHING -- IS AS OPPOSITE AS ANY

18   SITUATION CAN BE, EVEN DOWN TO CCTV PROVING HE IS INNOCENT.

19        YOU CAN TWIST EVERY BIT OF EVIDENCE, SUPPRESS EVERYTHING,

20   YOU DON'T LIKE IT, CALL IT MALINGERING WHEN IT SUITS YOU, BUT

21   YOU CAN NEVER TRULY GET RID OF THE TRUTH.

22        MR. TELLES AND XXXXX WERE TWO ADULTS WITH MENTAL ISSUES

23   THAT YOU ARE TAKING ADVANTAGE OF.  EVERY ACT OF MALINGERING IS

24   A GENUINE ISSUE, AND YOU FAILED YOUR ETHICAL DUTIES TO PROTECT

25   MR. TELLES AND THE PUBLIC'S RIGHTS.  YOU HAVE FAILED XXXXX IN

1    HER HOUR OF NEED.  SHE NEEDED HELP, AND DAVID IS THE ONLY

2    PERSON IN THE WORLD WHO GENUINELY LOVED AND CARED FOR XXXXX,

3    THE ONLY PERSON WHO GENUINELY HELP HER WITH NO ULTERIOR

4    MOTIVES.

5        ABUSE OF POWER BY BOTH THE U.K. AND AMERICAN GOVERNMENTS

6    FOR POLITICAL GAINS IS HORRIFIC.  ONE DAY SHE WILL UNDERSTAND

7    WHAT THE GOVERNMENT AND SOCIETY REALLY DID, FAILING HER NEEDS

8    IN COERCING AND MANIPULATING XXXXX, AND SHE WILL SUE BOTH

9    GOVERNMENTS FOR MILLIONS.  SHE WILL HELP RIGHT THIS

10   MISCARRIAGE OF JUSTICE.

11       SO MAKE NO MISTAKE, PRO PER GIVES MR. TELLES FAR MORE

12   COMPETENT COUNSEL THAN THIS CRIMINALLY ABUSIVE SARAH GOT --

13   SURROGATE PROSECUTOR WHOSE MOTIONS AND ARGUMENTS THEY MAKE IN

14   HIS NAME ARE NOT MR. TELLES'S ARGUMENTS, NOR BY HIS CONSENT.

15   YOU HAVE IMPRISONED A MAN IN HIS RIGHTS AND CALLED IT

16   CONSTITUTIONAL....

17           **THE COURT:**  ALL RIGHT.  YOU NEED TO WRAP IT UP NOW.

18   I WILL GIVE YOU THREE MORE MINUTES --

19           **THE DEFENDANT:**  AS MR. TELLES'S LEGAL TEAMS ASSERTS,

20   ALL THREE CHARGES ARE COMPLETELY UNCONSTITUTIONAL ALONG WITH A

21   HOST OF UNCONSTITUTIONAL VIOLATIONS.  THE GOVERNMENT'S

22   CORRUPTION AND PERJURY AND ABUSE OF JUDICIAL AND JURY

23   MISCONDUCT, EVEN THE MEDIA DOMINATED BY THE ME TOO MOVEMENT,

24   WE ASK FOR THE HELP OF THE PRESS AND THE ME TOO MOVEMENT.

25       MR. TELLES IS NOT A PREDATOR, BUT A DEFENDER OF VICTIMS

```
1    AND A VICTIM OF GOVERNMENT ABUSE.  ALONG WITH XXXXX BEING A

2    VICTIM OF GOVERNMENT AND SOCIETY'S ABUSE, A WOMAN WHO IS IN

3    DESPERATE NEED FOR HELP YOU ARE STANDING IN HER WAY OF HELP.

4        YOUR HONOR FAILED TO GET TO THE TRUTH TO PROTECT

5    MR. TELLES AND XXXXX.  YOU FAILED TO FIRE MR. STIPIANI.  YOUR

6    HONOR FAILED TO HOLD A COMPETENCY HEARING, FAILED TO DETERMINE

7    MR. TELLES'S MENTAL AND COMPETENT ABILITY FOR INCOMPETENT AS

8    WELL AS PRO PER.

9        YOU DO NOT FACTUALLY KNOW IF MR. TELLES IS A SIMPLETON OR

10   INCOMPETENT TO ASSIST OR DOING LITTLE MORE THAN WHAT HE'S

11   TOLD, A GLORIFIED PARROT, OR A COMPETENT ADULT, OR A COMPETENT

12   LAWYER.  YOU CANNOT DETERMINE A COMPLEX MENTAL HEALTH ISSUE

13   WITH MINUTES IN A COURTROOM OVER AN EXPERT PSYCHIATRIST AND

14   SIX LAWYERS ALL WITH GENUINE BONA FIDE DOUBTS WITH AN ABILITY

15   TO ASSIST AND RATIONALLY UNDERSTAND.

16       YOU CANNOT DENY A CONSTITUTIONAL RIGHT OF PRO PER WHEN YOU

17   CLAIM MALINGERING THEN YOU ARE LEFT WITH A STUTTER IN THE

18   RECORD TO DENY A CONSTITUTIONAL RIGHT AND A RIGHT THAT CASE

19   LAW IS WRONG ON AND WE POSE A CONSTITUTIONAL CHALLENGE TO THE

20   JUDGE'S ABILITY TO DENY PRO PER STATUS ON MENTAL HEALTH

21   ISSUES.

22       A, IT'S A CONSTITUTIONAL RIGHT.  B, AT LEAST AN EVALUATION

23   AND HEARING NEEDS TO BE HELD, AND PROOF OF DIMINISHED CAPACITY

24   TO BE UNABLE TO KNOWINGLY AND INTELLIGENTLY DECIDE TO WAIVE

25   COUNSEL.
```

1      MR. TELLES HAS NO REQUIREMENT TO BE A CAPABLE LAWYER.  YOU

2    CANNOT HOLD A PERSON COMPETENT, BUT INCOMPETENT TO CHOOSE A

3    BASIC DECISION.  IT IS ALL OR NOTHING.  YOU ARE COMPETENT FOR

4    TRIAL AND COMPETENT FOR PRO PER OR INCOMPETENT FOR BOTH THE

5    LEGAL REQUIREMENTS -- FOR BOTH.

6      THE LEGAL REQUIREMENTS ARE NOT A REQUIREMENT, ONLY TO

7    KNOWINGLY WAIVE THOSE RIGHTS.  AND MR. TELLES DELIBERATELY

8    STATED FOR THE RECORD HE WILL WAIVE GROUNDS FOR DELAY BASED ON

9    CHANGE OF COUNSEL AND WE WILL ARGUE IT ON LEGAL POINTS.

10      YOU HAVE NO LEGAL BASIS FOR DENYING PRO PER OR COMPETENCY

11    HEARING, AND NO EXCUSE NOT TO FIRE MR. STIPIANI -- STEPANIAN

12    WHEN EVEN A -- EVEN A SUBSTANTIATED ABUSE OF MR. STIPIANI'S --

13    STEPANIAN SEXUAL ASSAULTS EXIST.

14      YOUR BASIS ON PRE -- PREJUDICE HAVE LET YOU VIOLATE

15    MR. TELLES'S RIGHTS AS WELL AS DELIBERATE ACTS SUCH AS ABUSIVE

16    DECISIONS... SOMETHING, MISUSE OF CASE LAW LIKE THE DINGA

17    CASE.

18      ALL OF THIS ABUSE HAS LED TO AN INNOCENT MAN... MAN BEING

19    SUBJECT TO A MISCARRIAGE OF JUSTICE.  YOUR HONOR HAS FAILED

20    XXXXX --

21            **THE COURT:**  ALL RIGHT.  WRAP IT UP RIGHT NOW AND

22    STOP.

23            **THE DEFENDANT:**  I'M ALMOST DONE.

24            **THE COURT:**  I'LL GIVE YOU ONE MORE MINUTE.

25            **THE DEFENDANT:**  AND ANABEL AND AUSTIN, AND FAILED THE

```
1    AMERICAN PEOPLE, AND FAILED MR. TELLES.

2         YOU ARE THE -- YOU ARE FOR PRACTICAL PURPOSES IMPRISONING

3    THE HERO OF THE STORY AND PUT YOURSELF IN THE ROLE OF A

4    VILLAIN ALONG WITH MR. STEPANIAN AND BOTH GOVERNMENTS FOR

5    POLITICAL GAINS AND COVERUPS.  ALL OF THE EXPENSE -- ALL OF

6    THE SOMETHING OF XXXXX -- ALL OF THE EXPENSE OF XXXXX AND

7    ANABEL AND AUSTIN AND MR. TELLES.  WHILE MR. TELLES CONSIDERED

8    YOU AN IRRELEVANT FACTOR, HE IS THE KINDEST PERSON AND...

9    SOMETHING.  IS A TEAM -- PEOPLE THAT ARE ADVOCATING FOR HIM.

10   WE WILL SEE TO IT THAT TRUTH AND JUSTICE ARE SERVED.

11        AND, FINALLY, BEFORE YOU CAN CUT OFF MR. TELLES, ANY

12   DECENT LAWYER WOULD HAVE MET AND DEFENDED MR. TELLES OVER

13   EIGHT MONTHS.  AGAIN, GOING PRO PER A BETTER DEFENSE EVEN IN

14   LATE STAGES THESE LAWYERS HAVE NOT PREPARED FOR THE PSI OR

15   COMPLETELY AGREED THE MULTITUDE OF -- OH -- ARGUED AGAINST THE

16   MULTITUDE OF PROBLEMS OF THE PSI OR TRIED OR ARGUED

17   COMPETENTLY FOR 353(A) FACTOR AND DOWNWARD DEPARTURES OR

18   MISTRIAL OR APPEALS.

19        AND YOUR HONOR WRONG JUDGMENT OF MINIMUM TO ARGUE

20   MR. TELLES MENTAL ISSUE WITH NO LIMITED NUMBER TO ARGUE ALL OF

21   MR. TELLES'S PERSONAL GOING ON.  HIS DEEP LOVE OF HIS LATE

22   WIFE AT TEN YEARS, TO HAVE A GIRL PRETEND TO LOOK AND HAVE

23   THE... SOMETHING TO -- PROBLEM -- SAME PROBLEMS TO SHOW ALL

24   HIS ACCOMPLISHMENTS.  BEING A DISABLED MAN, RAISING TWO

25   PERFECT KIDS AND RUNNING TWO BUSINESSES EVEN FROM -- EVEN FOR
```

1    HIM TO FUNCTION DAILY IS AN ACCOMPLISHMENT IN HIS...

2    SOMETHING.

3        HE MAKE -- HIS GRANDMOTHER'S PASSING, HIS MOTHER'S BREAST

4    CANCER, THE ELEMENTARY SCHOOL SHOOTING IN NEW TOWN ALL

5    CONTRIBUTED TO MR. TELLES TRYING TO BE A HERO.

6        YOU MAY LAUGH AT HIM, CALL HIM A CRIMINAL, BUT HIS REALITY

7    IS VERY DIFFERENT THAN THE REALITY.  AND THAT REALITY IS VERY

8    DIFFERENT FROM THE FALSE REALITY YOU PERPETUATE --

9    PERPETUATED.  EVEN A LEGAL ARGUMENT CAN BE GENERALLY MADE FOR

10   SUPER ACCEPTANCE OF RESPONSIBILITY, VOLUNTARY SUCCESSION OF

11   CRIMINAL ACTIVITY, EXCEPTIONAL REHABILITATION EFFORTS,

12   EXTRAORDINARY FAMILY CIRCUMSTANCES, DUAL PROSECUTION, NO

13   RECIDIVISM, COMPLETE MENS REA, COLLATERAL CONSEQUENCES,

14   SENTENCE DISCREPANCY, 5K2.1, 2.11, 212, 213, 216, 220, 5H11,

15   13, 14, 16, 17, 18, 19.

16       WE WILL REST WITH YOU HAVING FAILED XXXXX, ANABEL AND

17   AUSTIN, EVEN THE PUBLIC, AND THE VERY CONSTITUTION YOU ARE

18   ETHICALLY DUTY BOUND TO ZEALOUSLY DEFEND.  WE WILL INVITE THE

19   PRESS TO HOOK MR. TELLES UP TO A LIE DETECTOR AND

20   CROSS-EXAMINE HIM.  HE HAS NOTHING TO HIDE.

21       **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

22   I WILL HEAR FROM THE GOVERNMENT NOW.

23       **MS. MCCALL:**  YOUR HONOR, WE'LL START WITH THE IMPACT

24   OF MR. TELLES'S ACTIONS ON THE VICTIM.

25       I THINK IT'S FAIR TO SAY THAT T.B. HAD PROBLEMS.  THAT'S

1    WHY SHE WAS REACHING OUT FOR ATTENTION AND FOR LOVE ON THE

2    INTERNET AND HOW SHE ENCOUNTERED MR. TELLES.

3        BUT IT'S ALSO FAIR TO SAY THAT SHE'S EXPERIENCING

4    LONG-TERM PSYCHOLOGICAL AND EMOTIONAL DAMAGE AS A RESULT OF

5    HER INVOLVEMENT WITH MR. TELLES.

6        HER DIFFICULTIES HAVE BEEN EXACERBATED BY HIS ACTIONS.

7    HER EXPERIENCE WITH MR. TELLES NEGATIVELY AFFECTS HER ABILITY

8    TO STUDY AND HAVE A QUOTE "NORMAL" LIFE.  SHE HAS DIFFICULTY

9    COPYING WITH STRESSFUL EVENTS SUCH AS COMING HERE TO TESTIFY

10   AT THIS TRIAL.

11       THE STRESS THAT SHE WAS EXPERIENCING WAS AMPLIFIED WHEN

12   THE DEFENDANT COLLAPSED JUST AS SHE FINISHED TESTIFYING.  SHE

13   WONDERED WHETHER HIS HERNIA WAS CAUSING HIM GREAT PAIN.

14       IN ADDITION TO THE EMOTIONAL AND PSYCHOLOGICAL IMPACT OF

15   MR. TELLES'S ACTIONS, T.B. HAS EXPERIENCED PHYSICAL

16   MANIFESTATIONS OF THAT STRESS.  IN THE INTEREST OF HER DIGNITY

17   AND PRIVACY, I WON'T EXPLAIN EXACTLY THOSE PHYSICAL

18   MANIFESTATIONS, BUT SHE'S ALSO EXPERIENCED NIGHT TERRORS AND

19   DIFFICULTY SLEEPING.

20       AS I STATED BEFORE, SHE MADE ARRANGEMENTS TO FLY HERE FOR

21   THE SENTENCING HEARING FOR SOME CLOSURE AND TO KNOW THAT THIS

22   CASE WAS FINISHED.  BUT SHE DECIDED, WHEN IT WAS GETTING TIME

23   TO GO TO THE AIRPORT, THAT IT WOULD BE JUST TOO MUCH FOR HER

24   EMOTIONALLY.  SO IT'S FAIR TO SAY THE VICTIM'S SELF-ESTEEM AND

25   SELF-CONFIDENCE ARE VERY LOW.  MR. TELLES'S CRIMES HAS HAD A

1    LASTING IMPACT ON HER.

2        WE AGREE WITH THE COURT'S FINDING WITH RESPECT TO

3    OBSTRUCTION OF JUSTICE IN THIS CASE AND THAT EACH OF THESE

4    MULTIPLE INDEPENDENT BASES DO FORM THE BASIS FOR THE

5    IMPOSITION OF THE ENHANCEMENT.

6        JUST TO BE CLEAR, THE GOVERNMENT WAS NEVER RELYING ON

7    TRYING TO REROUTE A DEPORTATION FLIGHT TO PUERTO RICO TO

8    SUPPORT THE OBSTRUCTION ENHANCEMENT.  IT'S ALL THE OTHER

9    THINGS THAT WE HAVE BRIEFED.

10        WE AGREE WITH THE COURT THAT THE FIVE-LEVEL ENHANCEMENT

11    FOR A PATTERN OF ABUSE UNDER SECTION 4B1.5 APPLIES.  WHETHER

12    IT'S BY THE STANDARD OF A PREPONDERANCE OF EVIDENCE, AS IS

13    USUALLY USED FOR THE SENTENCING GUIDELINES CALCULATIONS, OR

14    EVEN IF A CLEAR AND CONVINCING STANDARD APPLIES, WE SUBMIT

15    THAT THE FIVE-LEVEL INCREASE IS NOT EXTREMELY DISPROPORTIONATE

16    AND THAT THE FACTORS IN *UNITED STATES VERSUS TREADWELL*,

17    T-R-E-A-D-W-E-L-L CASE, THAT'S 593 F. 3D 990, THAT'S A NINTH

18    CIRCUIT 2010 CASE, THAT THESE FACTORS ALL INDICATE THAT IT IS

19    NOT AN EXTREMELY DISPROPORTIONATE INCREASE UNDER THE FACTS OF

20    THIS CASE.

21        SUCH AS THE FIRST FACTOR, WHETHER THE ENHANCED SENTENCE

22    FALLS WITHIN THE MAXIMUM SENTENCE FOR THE CRIME ALLEGED IN THE

23    INDICTMENT.  HERE FOR COUNT ONE, THE STATUTORY MAXIMUM IS

24    LIFE.

25        SECOND FACTOR, WHETHER THE ENHANCED SENTENCE NEGATES THE

1    PRESUMPTION OF INNOCENCE OR THE PROSECUTION'S BURDEN OF PROOF

2    FOR THE CRIME ALLEGED IN THE INDICTMENT.  HERE THERE WAS NO

3    NEGATION OF THE PRESUMPTION OF INNOCENCE.  THE GUILTY VERDICTS

4    WERE RETURNED UNANIMOUSLY BY THE JURY.

5        ANOTHER FACTOR IS WHETHER THE FACTS OFFERED IN SUPPORT OF

6    THIS ENHANCEMENT CREATE NEW OFFENSES REQUIRING SEPARATE

7    PUNISHMENTS.  THAT'S NOT AT ISSUE NOW BECAUSE THESE WERE

8    ALREADY PART OF COUNT THREE OF CONVICTION ENGAGING IN

9    PROHIBITED SEXUAL ACTS IN A FOREIGN PLACE.

10       THE FOURTH FACTOR, WHETHER THE INCREASE IN SENTENCE IS

11   BASED ON THE EXTENT OF THE CONSPIRACY.  IT'S NOT APPLICABLE

12   HERE.

13       THE FIFTH FACTOR, WHETHER AN INCREASE IN THE NUMBER OF

14   OFFENSE LEVELS IS LESS THAN OR EQUAL TO FOUR.  WE AGREE THAT

15   THIS IS THE ONLY FACTOR THAT WEIGHS IN FAVOR OF THE HIGHER

16   STANDARD OF PROOF FOR THIS ENHANCEMENT.

17       AND, FINALLY, WHETHER THE LENGTH OF THE ENHANCED SENTENCE

18   MORE THAN DOUBLES THE LENGTH OF THE SENTENCE AUTHORIZED BY THE

19   INITIAL SENTENCING GUIDELINES RANGE.  HERE, THE IMPACT OF THE

20   FIVE-LEVEL INCREASE INCREASES THE POTENTIAL RECOMMENDED

21   SENTENCE FROM 188 TO 235 MONTHS TO 324 TO 405 MONTHS.  IT'S

22   NOT MORE THAN DOUBLE THE SENTENCE.

23       MOVING ON TO THE 3553(A) FACTORS.  WE WOULD SUBMIT THAT

24   THE NATURE AND CIRCUMSTANCES OF THIS OFFENSE ARE DISTURBING,

25   DISTURBING CONDUCT TOWARDS A VULNERABLE 14-YEAR-OLD CHILD.

1        IN THE INTEREST OF PROTECTING THE VICTIM'S DIGNITY AND

2   PRIVACY, WE WON'T RECOUNT THE EXACT NATURE OF THE ABUSE, BUT

3   THE VICTIM TESTIFIED ABOUT WHAT HAPPENED IN THOSE HOTEL ROOMS.

4   IT IS INCLUDED IN THE SEALED PORTION OF THE GOVERNMENT'S

5   SENTENCING MEMO.

6        WE SUBMIT THAT THAT CONDUCT WAS REALLY REPREHENSIBLE.

7   MR. TELLES WAS VERY ACTIVE ON KIK MESSENGER AND ON CLASH OF

8   CLANS, AND APPEARED TO BE DEALING WITH VARIOUS PEOPLE WHO

9   APPEARED TO BE JUVENILES.

10       AND HE GROOMED THIS VICTIM, T.B.  THIS WAS NOT AN ABERRANT

11  ACT.  IT TOOK WEEKS OF TIME AND EFFORT, AND AN UNDERSTANDING

12  OF THE PSYCHOLOGY OF VULNERABLE TEENAGERS.  AFTER GROOMING

13  T.B. TO THE POINT THAT SHE BELIEVED SHE WAS MR. TELLES'S

14  GIRLFRIEND BY TELLING HER SHE WAS PRETTY AND SEXY, GET A

15  PASSPORT, BOOKED A FLIGHT TO A FOREIGN COUNTRY, RENTED A CAR,

16  DROVE ACROSS THE COUNTRY, AND ARRANGED FOR A HOTEL ROOM WHERE

17  HE BROUGHT THE VICTIM IN THROUGH THE BACK DOOR OF THE FIRST

18  HOTEL NEAR MIDNIGHT.

19       WE WOULD SUBMIT THAT THE OBSTRUCTION OF JUSTICE CONDUCT

20  UNDERCUTS ARGUMENTS THAT THIS CONDUCT IN THIS CASE WAS

21  ABERRANT, ESPECIALLY WITH HIS KNOWLEDGE ABOUT THE LIKELIHOOD

22  OF BEING PROSECUTED IF THE VICTIM TOLD THE TRUTH ABOUT WHAT HE

23  HAD DONE TO HER.  SO AS THEY WERE DRIVING AROUND, AND THE

24  POLICE AND T.B.'S FATHER WERE TRYING TO FIND THEM, HE WAS

25  SUGGESTING THAT SHE NOT TELL THE POLICE WHAT HAPPENED BECAUSE

1    IF SHE DID SO, HE WOULD GO TO JAIL AND HIS CHILDREN WOULD BE

2    LEFT WITH NO PARENTS.  AND IF HIS HERNIA WAS DISTURBED, SHE

3    WOULD BE A MURDERER.

4         THE DEFENDANT SUBMITS THAT -- THE MEMO SUBMITS THAT THE

5    REASON HE COMMITTED THESE CRIMES AND RECENTLY ACTED IN THE

6    WAYS THAT WOULD MAKE EVERYONE, INCLUDING THE DEFENSE

7    PSYCHOLOGIST WANT TO RING HIS NECK, WAS MENTAL ILLNESS.

8         THIS ARGUMENT IS UNDERCUT BY MR. TELLES'S PERSONAL

9    HISTORY.  HE GRADUATED FROM PLEASANTON HIGH SCHOOL.  HE WAS A

10   SMALL BUSINESS OWNER.  HE'S A FATHER OF TWO TEENAGERS.  AND AS

11   DISCUSSED BEFORE, HE CAME UP WITH THIS ABILITY TO GROOM A

12   CHILD ONLINE, PLAN THIS INTERNATIONAL TRIP, AND TRIED TO

13   CONVINCE HER NOT TO TELL THE POLICE WHAT HAPPENED.

14        WE WOULD SUBMIT THAT HIS CONDUCT DURING THIS WHOLE CASE,

15   GOING BACK TO FIVE YEARS AGO, WAS WILLFUL AND MANIPULATIVE,

16   AND THEN THE CONDUCT MORE RECENTLY DURING TRIAL WAS GEARED AT

17   CAUSING A MISTRIAL AND CREATING ISSUES FOR APPEAL.

18        WITH RESPECT TO DETERRENCE, GIVEN MR. TELLES'S LACK OF

19   ACCEPTANCE OF RESPONSIBILITY, IT IS UNCLEAR WHAT --

20             **THE DEFENDANT:**  I DID NOT --

21             **THE COURT:**  QUIET.  YOU'VE HAD YOUR CHANCE.  KEEP

22   YOUR MOUTH SHUT.

23             **THE DEFENDANT:**  -- DOUBLE IT, TRIPLE IT.  I DON'T

24   GIVE A SHIT WHAT YOU --

25             **THE COURT:**  TAKE HIM OUT OF HERE.  HE'S WAIVED HIS

```
1    RIGHT TO BE HERE.  GET OUT OF HERE.

2              (DEFENDANT ESCORTED OUT OF COURT.)

3         THE COURT:  CONTINUE.

4       THE RECORD WILL REFLECT THAT THE MARSHALS REMOVED THE

5    DEFENDANT AFTER HE, ONCE AGAIN, DISRUPTED THE PROCEEDINGS WITH

6    HIS OUTBURST.

7       GO AHEAD.

8         MS. MCCALL:  YOUR HONOR, ULTIMATELY WE WOULD

9    RECOMMEND A SENTENCE AT THE LOW END OF THE GUIDELINES WITH

10   CREDIT OF 27 MONTHS FOR THE TIME HE SERVED IN CUSTODY IN

11   ENGLAND, EQUALING 297 MONTHS CONCURRENT FOR EACH OF THE

12   COUNTS.  AND WE WOULD RECOMMEND THAT HE SERVE A LIFETIME ON

13   SUPERVISED RELEASE WITH CONDITIONS RECOMMENDED BY THE

14   PROBATION OFFICE.

15        THE COURT:  THANK YOU.

16      MR. STEPANIAN OR MS. NAEGELE.

17        MR. STEPANIAN:  WE WANT TO BOTH SAY A FEW WORDS --

18        THE COURT:  JUST A MOMENT.

19        THE CLERK:  I TURNED IT ON.

20        THE COURT:  THE RECORD WILL REFLECT THAT THE

21   PROCEEDINGS ARE BEING -- THE AUDIO IS BEING BEAMED INTO THE

22   LOCKUP WHERE MR. TELLES IS HOUSED AT THE MOMENT SO HE CAN HEAR

23   WHAT IS GOING ON IF HE WISHES TO HEAR.

24      YOU MAY PROCEED.  SORRY, COUNSEL.

25        MS. NAEGELE:  THANK YOU, YOUR HONOR.  I'M JUST GOING
```

1    TO ADDRESS THE GUIDELINES CALCULATION VERY BRIEFLY, AND THEN

2    MR. STEPANIAN WILL TALK ABOUT THE OTHER SENTENCING FACTORS.

3          **THE COURT:**  VERY WELL.

4          **MS. NAEGELE:**  WITH REGARD TO THE USE OF A COMPUTER

5    ENHANCEMENT, THE DEFENSE MERELY NOTES THAT THE OFFENSE IS

6    TITLED IN THE INDICTMENT ITSELF AS "ONLINE ENTICEMENT"

7    QUOTE-UNQUOTE.  THEREFORE THE USE OF A COMPUTER -- THERE'S NO

8    OTHER WAY TO COMMIT ONLINE ENTICEMENT THAN BUT WITH THE USE OF

9    A COMMUTER.

10          AND WHILE THE STATUTE DOES MENTION MAIL AS A MEANS, IN

11    PRACTICE, THE -- I WOULD SAY THE VAST MAJORITY OF CASES ARE

12    COMMITTED WITH A COMPUTER.  AND HE -- THE BASE OFFENSE LEVEL

13    FOR 2422(B) IS ALREADY FOUR LEVELS HIGHER THAN HAD IT BEEN

14    COUNTS TWO OR THREE.

15          AND WITH REGARD TO THE PATTERN ENHANCEMENT, THE -- AS THE

16    GOVERNMENT NOTED, THE INCREASE IN HIS EXPOSURE UNDER THE

17    GUIDELINES IS VERY SIGNIFICANT HERE.  IT'S 146 TO 165

18    ADDITIONAL MONTHS JUST FOR THE SECOND DAY IN THE HOTEL ROOM

19    WHICH, AGAIN, WITHOUT TRYING -- WITHOUT WANTING TO DISRESPECT

20    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

21    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

22    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23    XXX.

24          SO ON WHAT THE -- WHAT YOUR HONOR HAS ACKNOWLEDGED IS A

25    CLOSE QUESTION AND THAT HAS NOT BEEN ADDRESSED BY THE NINTH

1  CIRCUIT, THE DEFENSE WAS UNABLE TO FIND A CASE BY THE NINTH

2  CIRCUIT ADDRESSING THIS ISSUE, THAT THAT SECOND DAY DOES NOT

3  WARRANT THE ADDITION OF 146 TO 165 ADDITIONAL MONTHS.

4          **THE COURT:**  THANK YOU VERY MUCH.

5      MR. STEPANIAN?

6          **MR. STEPANIAN:**  YES.  MR. TELLES'S FATHER AND

7  MR. TELLES'S BROTHER ARE HERE IN THE COURTROOM.  THEY ARE

8  VERY, VERY NICE PEOPLE.  THEY ARE ENCOURAGING.  THEY

9  ENCOURAGED ME.  THEY ENCOURAGED THE TRIAL TEAM.  THEY WERE

10  HERE EVERY DAY IN THE TRIAL.  IT IS AN EXAMPLE OF HOW HE,

11  DAVID TELLES, IS AN ABERRATION IN HIS CONDUCT.  IT EXPLAINS

12  THAT.  ONLY BECAUSE EVERYTHING AROUND HIM, EVERYTHING AROUND

13  HIM OPERATES IN A SIGNIFICANT RESPONSIBLE MANNER.

14      HIS FATHER, HIS MOTHER, HIS BROTHER, HIS TWO KIDS, THEY

15  OPERATE IN THIS COUNTRY, AND YET THIS SITUATION HAS OCCURRED.

16  AND IT IS AN ABERRATION IN RELATIONSHIP TO HIS ENVIRONMENT HIS

17  SET AND SETTING.

18      THIS CONVERSATION THAT YOU HEARD FROM HIM IS AN EXAMPLE OF

19  HIS BELIEF SYSTEM.  HIS BELIEF SYSTEM.  AND I KNOW IN MANY OF

20  THESE DEFENSES, FANTASY IS A DEFENSE TO CHILD PORNOGRAPHY.

21  INAPPROPRIATE CONDUCT WITH CHILDREN, FANTASY IS USED AS A

22  DEFENSE.  THIS IS NOT FANTASY.

23      THIS IS A SITUATION WHERE, BASED ON HIS WIRING SYSTEM, HE

24  ACTUALLY BELIEVED AND, FRANKLY, I DON'T WANT TO SAY ANYTHING

25  DISRESPECTFUL TO THE VICTIM, WHICH IS DIFFICULT IN THE FIRST

1    PLACE, BUT SHE CREATED A PERSONA, ACTRESS, WORKER, WAITRESS,

2    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

3    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5    I AM THIS AGE.  I AM THAT AGE.  AND HAS CREATED AGGRESSIVELY,

6    USING THE INTERNET, USING THESE VARIOUS CLASH AND KIKS WITH

7    HER FATHER WHO INTRODUCED HER TO THIS CLASH OF CLANS.  WAS ON

8    CLASH OF CLANS.

9        HE -- DID HE MONITOR HER?  DID HE LOOK AT THE CLASH OF

10   CLANS?  DID HE SEE WHAT SHE WAS DOING?  DID HE PARTICIPATE OR

11   DID NOT PARTICIPATE?  THIS IS WHAT HAPPENED HERE.  THIS IS

12   A -- THIS IS A YOUNG GIRL THAT IS CREATING PERSONAS WHICH

13   AGGRAVATED THE WIRING OF THAT PERSON WHO, IN A SENSE, COULDN'T

14   CONTROL HIMSELF FOR A FEW MINUTES STANDING HERE.  WAS OKAY FOR

15   A WHILE.  WAS OKAY FOR A WHILE.  HE EXPRESSED HIS INNOCENCE.

16   HE STATED HIS INNOCENCE.  AND YET HE COULDN'T CONTROL HIMSELF

17   TO THE EXTENT THAT HE WOULD DEMAND THREE LIFE SENTENCES.

18       THERE IS A FINE LINE HERE, AND YOU HAVE A LOT OF

19   EXPERIENCE WHEN IT COMES TO THIS.  THERE IS A LINE BETWEEN

20   THESE PEOPLE WHO WE ARE REPRESENTING WHO, BECAUSE OF ONE

21   REASON OR ANOTHER, ARE ANGRY, ARE UPSET, HATE THE SYSTEM, HATE

22   THEIR LAWYERS, GET BAD ADVICE BY THESE JAILHOUSE LAWYERS

23   SKULKING AROUND.  THEY GET TERRIBLE ADVICE.  THEY HATE THE

24   SYSTEM.  THEY HATE EVERYTHING.  THEY ARE TERRIBLE.  THEY ARE A

25   PAIN IN THE BUTT TO REPRESENT.  THE WORST.  THIS IS WHAT'S

1    HAPPENING.

2         STATE COURT, STATE COURT... PEOPLE WHO ARE FELON WITH A

3    GUN IS SUDDENLY FROM GETTING 18 MONTHS IN THE STATE SYSTEM ARE

4    NOW LOOKING AT CAREER CRIMINAL TYPE NUMBERS, 12 YEARS, 15

5    YEARS, 20 YEARS.  NEVER HAPPENED BEFORE IN THESE FEDERAL

6    COURTS.  NEVER HAD DEFENDANTS OF THIS NATURE REBELLING AGAINST

7    THE SYSTEM.

8         BUT MOST OF THEM, AFTER PLEA OR TRIAL, MOST OF THEM,

9    ALMOST ALL OF THEM WILL THEN AT LEAST ATTEMPT TO CONFER WITH

10   THE PROBATION DEPARTMENT, TRY AND TELL THE PROBATION

11   DEPARTMENT I NEED THREE POINTS.  I WANT THREE POINTS, OR I'M

12   REALLY A NICE GUY AND THESE ELEMENTS HAVE CREATED THIS, OR TRY

13   AND MANIPULATE TO A GREAT EXTENT THE PROBATION OFFICER, PAID

14   PSYCHIATRIST THAT ARE COMING IN TO HELP WITH THE SENTENCING,

15   PAID SENTENCING CONSULTANTS, THEY WANT A LESS OF A SENTENCE.

16        NOT HIM.  NOT HIM.  HE DID EVERYTHING HE COULD TO GET A

17   HIGHER SENTENCING.  UPSET ME, UPSET JEN, UPSET KEVIN MORLEY,

18   UPSET THE THREE LAWYERS BEFORE, UPSET THE COURT, UPSET

19   EVERYONE HE POSSIBLY COULD, EVEN A PSYCHIATRIST, JEREMY COLE,

20   WHO I TOLD TO SEE HIM.  I SENSED WHAT THE RESULT WAS, AND HE

21   DIDN'T EVEN -- WASN'T ABLE TO GET DOWN THE SURFACE OF WHAT'S

22   HAPPENING.

23        THIS IS 3553 WRITTEN ALL OVER IT.  THIS IS NOT A CASE

24   WHERE HE SHOULD GET OVER 15 YEARS, OVER 10 YEARS.  THIS IS NOT

25   A CASE LIKE THAT.

1        THIS IS ONE ACT, ALBEIT TWO DAYS.  THE SECOND DAY HE'S A

2   NAIVE, IMMATURE CHILD.  HE NEVER HAD A SEXUAL EXPERIENCE UNTIL

3   HE WAS MARRIED.  HE NEVER HAD A DATE.  HE NEVER WENT OUT WITH

4   GIRLS.  HE HAS ABSOLUTELY NO FRIENDS.  LONELY, SOLITARY,

5   BROODING, DEPRESSED, SAD FELLOW.  THAT IS WHO HE IS.  THAT IS

6   WHAT WE ARE DEALING WITH.

7        SO WHAT HAPPENS IS, IN THAT MOMENT THAT HE FINALLY

8   OPERATED WHERE HE COULD COMMUNICATE WITH SOMEBODY, HE THOUGHT

9   WAS 27, HE THOUGHT WAS 16, HE THOUGHT WAS 18, WHATEVER THE

10  AMOUNT WAS -- OF TIME WAS, HE GENUINELY THOUGHT THAT THIS WAS

11  MY FIRST ROMANCE.  HE'D NEVER HAD A ROMANCE.  THERE'S NO

12  INCIDENTS OF CHILD MOLESTATION.  THERE'S NO CHILD PORNOGRAPHY

13  ON HIS COMPUTER.  HE HAD REGULAR ADULT PORNOGRAPHY, BUT NO

14  CHILD PORNOGRAPHY.  NO ADOLESCENT SEXUAL BEHAVIOR.  FORGET IT.

15       SHE IS TALKING TO HIM, AND FOR THE FIRST TIME IN HIS LIFE

16  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

18  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

19  XXXXXXXXXXXXXXXXXXXXXXXX

20       THAT'S WHAT SHE'S SAYING TO HIM.  NO ONE HAS EVER SAID

21  THAT TO HIM.  NO WOMAN HAS EVER SAID THAT TO HIM.  EVER,

22  NEVER, EVER.  AND FOR THE FIRST TIME THIS IS HAPPENING.

23       LET ME TELL YOU ABOUT THE DIFFERENCE IN PATTERN HERE.  THE

24  FIRST NIGHT -- I DIDN'T EVEN CROSS-EXAMINE HER ON SEXUAL

25  CONDUCT.  I, FRANKLY, MY THEORY IN THIS CASE WAS THAT HE

1  DIDN'T ENTICE HER.  HE DIDN'T ENTICE HER.  BUT THE FACT --

2  BECAUSE THAT'S A TEN-YEAR MINIMUM MANDATORY.  AND AS FAR AS

3  SEX, WHAT AM I GOING TO DO, CROSS-EXAMINE THIS GIRL AND SAY,

4  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5      BUT THE FACT OF THE MATTER IS, THE SECOND DAY, AND IT'S IN

6  THE REPORT, AND THIS IS WHAT SHE SAID, WE HAD, I DON'T KNOW IF

7  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

8  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

9      HE'S NOT USED TO SEX.  HE DOESN'T UNDERSTAND WHAT SEX IS

10 ALL ABOUT.  HE HAS NO CONCEPT OF ROMANTIC SEX.  HE HAS NO IDEA

11 OF HOW TO TREAT A WOMAN, DEAL WITH A WOMAN.  HE HAS NO CONCEPT

12 OF THAT.

13      AND YET, THIS PATTERN, WHICH I'M VERY UPSET ABOUT, IS THE

14 FACT THAT BETWEEN A PATTERN AND NO PATTERN, IS OVER A HUNDRED

15 MONTHS.  AND WE ARE NOW ADDING FIVE LEVELS BECAUSE SHE SAYS,

16 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

18 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

19 XXXXXXXXXXXXXXXXXXXXXXXXXXXXX

20      THAT'S IT.  THAT WAS THE SECOND DAY WHEN THEY WERE AT THE

21 OTHER HOTEL.  NOT THE FIRST DAY.  THAT'S THE SECOND DAY.

22 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24 DAY.

25      THAT IS WHAT AMOUNTS TO A PATTERN.  IT CERTAINLY CAN'T BE

1    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

2    HER, THE FIRST HOTEL.  THE PATTERN COULDN'T BE CREATED THERE.

3    LET'S ASSUME IT'S THE SECOND DAY, AND THAT'S WHAT HAPPENED.

4    IS THAT WORTH A HUNDRED MONTHS?  IS THAT WORTH A HUNDRED

5    MONTHS?

6        I AM NOT EXCUSING IT.  I'M NOT CONDONING IT.  I'M ONLY

7    SAYING THAT THIS IS WHY IT'S A VERY DIFFICULT QUESTION, AND I

8    QUESTION THE IDEA OF A PATTERN IN RELATIONSHIP TO WHAT THE

9    COST OF THAT PATTERN IS IN TIME.

10       WHAT IS HE -- WHAT'S GOING TO HAPPEN WITH HIM?  WHAT'S

11   GOING TO HAPPEN WITH HIM?  IF HE GOES TO PRISON FOR TEN YEARS

12   AND HOPEFULLY HE GETS TREATMENT, BUT IS HE REALLY GOING TO GET

13   TREATMENT THERE?  PERHAPS.  PERHAPS.

14       IS IT GOING TO BE WORTH HIM GOING FOR 15 YEARS?  IS FIVE

15   YEARS GOING TO CHANGE THINGS OR 20 YEARS FOR THIS CONDUCT?

16   FOR THE FIRST TIME IN HIS LIFE, FOR THE FIRST TIME THAT HE DID

17   ANYTHING OF ANY CRIMINALITY WHATSOEVER, HE'S GOING TO PAY A

18   PRICE FOR 20 YEARS FOR FIRST -- I HAVE A DAUGHTER.  I FEEL

19   SYMPATHY FOR THE VICTIM.  NO QUESTION ABOUT THAT.

20       BUT THE FACT OF THE MATTER IS, THAT ARE WE GOING TO, FOR

21   THE FIRST TIME, YOU DON'T GIVE 20 YEARS BECAUSE HE'S AN

22   OBNOXIOUS PUNK.  YOU DON'T GIVE 20 YEARS FOR THAT.  YOU DON'T

23   GIVE 20 YEARS BECAUSE HE HAS NO RESPECT FOR MARSHALS, ME, JEN,

24   PROSECUTORS, PROBATION OFFICERS, THIS COURT, YOU.  YOU DON'T

25   GIVE 20 YEARS FOR THAT.

1    YOU GIVE IT FOR CONDUCT.  AND YOU GIVE IT FOR WHAT HE DID.

2    AND IF YOU LOOK AT WHAT HE DID, TERRIBLE.  BUT FIRST TIME HIS

3    ENTIRE LIFE.  DOES HE GET CREDIT FOR HAVING TWO BEAUTIFUL

4    CHILDREN?  DOES HE GET CREDIT FOR BEING BADLY WIRED?

5    I DON'T KNOW IF HE GETS CREDIT.  HE GETS SOME CREDIT, I

6    SUPPOSE.  YES, HE IS IN CATEGORY I, BUT HE IS NOT EVEN A DUI.

7    HE DOESN'T DRINK.  HE NEVER USED DRUGS.  HE DOESN'T DRINK AND

8    DRIVE.  HE DOES NOTHING.

9    HE'S HOARDING STUFF IN HIS CRAZY CELL.  HE'S HOARDING

10    STUFF IN HIS HOUSE.  YOU COULDN'T GET THROUGH THE DOOR OVER

11    HERE.  HE'S NOT A NORMAL INDIVIDUAL.

12    BUT HIS CONDUCT IN THIS CASE, NO MATTER IF HE FLEW THERE

13    AND BOUGHT THE ENGAGEMENT RING, OH, I WANT TO GET MARRIED, I

14    WANT TO GET MARRIED.  I WANT TO MARRY.  YES, WE'LL GET

15    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

16    BUT IS IT WORTH 15 OR 20 YEARS?  IS THAT CONDUCT IN ONE

17    PERSON, 38 YEARS OLD EVER WORTH 38 YEARS?  THAT'S ALL I COULD

18    SAY.  TEN YEARS IS SUFFICIENT.

19    DO I NEGOTIATE WITH THE -- WITH THE WORLD AND SAY 12; IS

20    THAT OKAY?  I'M NOT GOING TO DO THAT.  I THINK TEN YEARS IS A

21    LONG ENOUGH TIME, A MINIMUM MANDATORY SENTENCE FOR THAT KIND

22    OF CONDUCT IS SUFFICIENT AND NOT MORE THAN NECESSARY.

23    **THE COURT:**  THANK YOU.

24    **MS. NAEGELE:**  IF I CAN JUST ADD ONE VERY BRIEF THING.

25    **THE COURT:**  SURE.

1      **MS. NAEGELE:**  IN THE EVENT THE COURT DOES FIND THE

2    PATTERN, WE WOULD ASK THAT THAT BE ANOTHER GROUNDS FOR A

3    VARIANCE UNDER 3553(A), THE FACT THAT IT WAS SO CLOSE, THE

4    FACT IT WAS BASED ON NOT A LONG PATTERN, JUST THE SECOND DAY

5    IN QUESTION.  THAT'S ANOTHER GROUNDS FOR VARIANCE.

6      **THE COURT:**  ALL RIGHT, THANK YOU.

7      I'M GOING TO TAKE TEN MINUTES NOW, AND PERHAPS THROUGH THE

8    MARSHALS OR HOWEVER, YOU CAN COMMUNICATE WITH MR. TELLES AND

9    ASK IF HE WANTS TO JOIN US.  IF HE WILL AGREE TO REFRAIN FROM

10   ACTING OUT, HE'S WELCOME TO COME BACK.

11     **MR. STEPANIAN:**  THANK YOU, YOUR HONOR.

12     **THE COURT:**  I'LL GIVE YOU THAT TIME AND YOU CAN LET

13   US KNOW ON THE RECORD.  WE'LL TAKE TEN MINUTES.

14     (RECESS TAKEN AT 2:25 P.M.; RESUMED AT 2:42 P.M.)

15     (PROCEEDINGS HELD IN THE PRESENCE OF THE DEFENDANT.)

16     **THE CLERK:**  REMAIN SEATED. COME TO ORDER.  COURT IS

17   AGAIN IN SESSION.

18     **THE COURT:**  WE ARE BACK IN SESSION.  THE RECORD WILL

19   REFLECT THAT MR. TELLES IS AT COUNSEL TABLE, AND I WILL NOW --

20   THE COURT WILL NOW EXPLAIN ITS SENTENCE.

21     THE COURT HAVING DETERMINED THE APPROPRIATE GUIDELINE

22   CALCULATION, IT WILL NOW EXPLAIN ITS SENTENCE UNDER TITLE 18,

23   UNITED STATES CODE, SECTION 3553(A).

24     THE DEFENSE ARGUES THAT MR. TELLES'S PLACEMENT ON THE ASD

25   SPECTRUM AND OBSESSIVE COMPULSIVE DISORDER WARRANT A DOWNWARD

1    VARIANCE.  IN ITS SENTENCING MEMORANDUM, THE DEFENSE DESCRIBES

2    MR. TELLES'S STRUGGLES WITH OBSESSIVE COMPULSIVE DISORDER IN

3    HIS ADULT LIFE -- AND BY THE WAY, THEIR ARGUMENTS ALSO ARE

4    MADE, THE DEFENSE ARGUMENTS, IN FAVOR OF A DOWNWARD VARIANCE.

5        HIS MOTHER REPORTED THAT HE HAD DIFFICULTY SOCIALIZING AND

6    WAS BULLIED.  MR. TELLES WAS ALSO DIAGNOSED WITH A LEARNING

7    DISABILITY IN KINDERGARTEN AND, THROUGHOUT HIS CHILDHOOD,

8    EXHIBITED DIFFICULTY READING AND WRITING.

9        IN THE LEAD-UP TO TRIAL DEFENSE EXPERT, DR. DENISE

10   KELLAHER, DIAGNOSED MR. TELLES WITH ASD.  MR. KELLAHER --

11   DR. KELLAHER NOTED MR. TELLES'S ASD MANIFESTED IN RITUALS,

12   HIGHLY FOCUSED INTERESTS, GULLIBILITY, AND

13   COGNITIVE-BEHAVIORAL INFLEXIBILITY.

14       THE DEFENSE ARGUES THAT MR. TELLES BELIEVED THE STORIES

15   THAT THE VICTIM TOLD HIM ABOUT NEEDING HIS HELP AND BEING IN

16   TROUBLE.  MR. TELLES, THE DEFENSE ARGUES, BELIEVES HE WAS

17   TRAVELING TO THE UNITED KINGDOM TO RESCUE T.B. FROM A

18   DANGEROUS SITUATION.  DR. COLES HAS EXPLAINED THAT HE BELIEVES

19   MR. TELLES'S ALIENATION OF HIS RELATIONSHIPS WITH HIS

20   REPRESENTATIVES, HIS ATTORNEYS, HIS FAMILIES, AND MENTAL

21   HEALTH PROFESSIONALS, STEMS FROM A COMPLICATED MIX OF

22   SELF-DESTRUCTIVE PROPENSITIES, BUT A POSSIBLE UNDERSTANDING OF

23   THE EFFECT OF HIS ACTIONS AND ATTITUDES QUOTE "IN THE SOCIAL

24   REALM", UNQUOTE.

25       THE DEFENSE CONTENDS THAT MR. TELLES'S BEHAVIOR, HIS

1    CRIMINAL CONDUCT AND HIS BEHAVIOR DURING TRIAL, IS ROOTED IN

2    MANY OF THE MANIFESTATIONS OF HIS ASD AND, THEREFORE, WARRANTS

3    A VARIANCE OR A DOWNWARD DEPARTURE.

4        THE COURT DISAGREES.  THE COURT EXCLUDED DR. KELLAHER'S

5    PROPOSED TESTIMONY AND REPORT IN PART BECAUSE SHE NEVER

6    COMPLETED HER EVALUATION OF MR. TELLES.  DR. COLES, TOO, WAS

7    UNABLE TO CONDUCT A FULL EVALUATION OF MR. TELLES.  EVEN

8    THOUGH DR. COLES OBSERVED MR. TELLES WAS DEEPLY DISTURBED,

9    DR. COLES STATED THAT HE HAD QUOTE "NO ABILITY" UNQUOTE TO

10   ASSESS MR. TELLES'S MENTAL FUNCTIONING WITH ANY LEVEL OF

11   PSYCHOLOGICAL PROBABILITY.  THAT'S A QUOTE FROM DR. COLES.

12       DURING TRIAL, MR. TELLES SHOWED HIMSELF TO BE A HIGHLY

13   INTELLIGENT, CAPABLE, AND MANIPULATIVE INDIVIDUAL.  JUST

14   BECAUSE HE HAS CONSISTENTLY ACTED IN A SELF-DESTRUCTIVE MANNER

15   DOES NOT SUGGEST THAT HE HAS DIMINISHED CAPACITY THAT WOULD

16   WARRANT LENIENCY.

17       THE DEFENSE NEXT ARGUES THAT MR. TELLES'S SO-CALLED

18   TRAUMATIC PAST, INCLUDING AN INCIDENT OF MOLESTATION WHEN HE

19   WAS A CHILD, AND THE SUDDEN DEATH OF HIS MENTALLY ILL WIFE DUE

20   TO A DRUG OVERDOSE, WARRANTS A DOWNWARD DEPARTURE.  THE

21   DEFENSE ALSO POINTS TO MR. TELLES'S SUPPORTIVE FAMILY AND

22   SUCCESSFUL HIGHLY MOTIVATED CHILDREN.  THE PRESENTENCE REPORT

23   SUGGESTS MR. TELLES WAS A DOTING AND LOVING FATHER BEFORE THIS

24   OFFENSE.  THE DEFENSE ARGUES THAT FAMILY SUPPORT WILL MITIGATE

25   THE RISK OF RECIDIVISM AND THAT A LONG SENTENCE WOULD BE A

1  HARDSHIP FOR HIS CHILDREN.

2      THE COURT IS VERY SYMPATHETIC TOWARD THOSE ARGUMENTS, BUT

3  THE COURT IS CONCERNED ABOUT MR. TELLES'S PROPENSITY TO

4  REOFFEND DUE TO HIS LACK OF REMORSE AND HIS UNWILLINGNESS TO

5  ADMIT THAT HE HAS DONE ANYTHING WRONG.

6      THE COURT IS NOT CONVINCED THAT FAMILY SUPPORT CAN OR

7  WOULD NEGATE MR. TELLES'S SINGLE-MINDEDNESS ON THIS SUBJECT IF

8  HE BECOMES DETERMINED TO REPEAT THE BEHAVIOR HE EXHIBITED IN

9  THIS CASE.

10      MR. TELLES'S CHILDREN ARE COLLEGE-AGED ADULTS OR NEARLY

11  ADULTS, AND A SENTENCE WILL NECESSARILY HAVE A DIFFERENT

12  EFFECT ON MR. TELLES'S CHILDREN THAN IT WOULD HAVE ON MUCH

13  YOUNGER CHILDREN.  WITH RESPECT TO THE TRAUMAS THAT MR. TELLES

14  HAS SUFFERED, AS SYMPATHETIC AS THE COURT IS TO THE PAIN

15  LIKELY INFLICTED UPON MR. TELLES AND HIS FAMILY BY THESE

16  EVENTS, THE COURT DOES NOT BELIEVE THEY RISE TO THE LEVEL OF

17  MITIGATING MR. TELLES'S SENTENCE.

18      THE DEFENSE NEXT EXPLAINS THAT MR. TELLES'S CRIMINAL

19  CONDUCT WAS A MARKED DEVIATION FROM AN OTHERWISE LAW-ABIDING

20  LIFE.  DR. COLES HAS CONCLUDED THAT MR. TELLES DOES NOT HAVE A

21  PEDOPHILIC DISORDER OR PEDOPHILIC URGES AND THAT HIS RISK OF

22  REOFFENDING IS LOW.

23      THE COURT DOES NOT AGREE WITH THE DEFENSE'S ASSESSMENT OF

24  MR. TELLES'S PROPENSITY TO REOFFEND.  AS THE COURT MENTIONED,

25  MR. TELLES HAS DISPLAYED A COMPLETE LACK OF REMORSE FOR HIS

1    ACTIONS.  EVEN ASSUMING MR. TELLES LACKS CERTAIN PEDOPHILIC

2    TENDENCIES, HIS ATTITUDES ABOUT HIS PAST BEHAVIOR CAUSE THE

3    COURT GRAVE CONCERNS.

4         MOREOVER, WHETHER MR. TELLES WILL OFFEND IS NOT A BINARY

5    CONSIDERATION.  HE MAY NOT MEET THE CHARACTERISTICS, IN

6    DR. COLES'S OPINION, OF DEFENDANTS LIKELY TO REOFFEND.

7    HOWEVER, MR. TELLES'S INABILITY TO ADMIT THAT HIS BEHAVIOR IN

8    THIS CASE WAS WRONG SUGGESTS TO THE COURT THAT HE WOULD NOT

9    NECESSARILY AVOID SIMILAR BEHAVIOR IN THE FUTURE.

10        LET ME JUST -- LET ME JUST DIGRESS A MOMENT AND SAY THAT

11   THE DEFENSE THAT THE COURT HEARD TODAY FROM THE DEFENDANT AND

12   WHICH WAS PUT FORTH WELL BY HIS COUNSEL DURING THE TRIAL AND

13   DURING ARGUMENT IN THIS CASE IS COMPLETELY INCREDIBLE TO THE

14   COURT, NOT WORTHY OF BELIEF, AND THAT IS SIMPLY BECAUSE THE

15   DEFENDANT ACTED IN A WAY THAT WAS INCONSISTENT WITH WHAT HE IS

16   TELLING THE COURT TODAY.

17        THAT IS TO SAY, WHEN HE ALLEGEDLY HEARD AND HEARD ABOUT

18   THESE SUPPOSED FAMILY ISSUES OF ABUSE BY -- OF THE VICTIM BY

19   HER FAMILY AND OTHERS, THE FIRST THING HE DID WHEN HE ARRIVED

20   IN THE U.K. WAS NOT CALL THE POLICE, NOT TAKE HER TO A

21   SHELTER, BUT TO SPIRIT HER, CAUSE HER TO BE SPIRITED OUT OF

22   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24        THESE ARE NOT ACTIONS CONSISTENT WITH THE STORY THAT THE

25   DEFENDANT TELLS, AND THE COURT DOES NOT BELIEVE THAT STORY FOR

1    ONE MINUTE.

2        THE DEFENSE ARGUES THAT MR. TELLES'S GAINFUL TEN YEARS OF

3    SELF-EMPLOYMENT AND PREVIOUS EMPLOYMENT IN THE CONSTRUCTION

4    INDUSTRY WARRANTS A DOWNWARD VARIANCE.  GIVEN THE HIGHLY

5    DISTURBING FACTS OF THIS CASE AND THE ABUSE T.B. SUFFERED, THE

6    COURT DOES NOT THINK IT APPROPRIATE TO GRANT A DOWNWARD

7    VARIANCE BASED UPON MR. TELLES'S EMPLOYMENT HISTORY.

8        THE DEFENSE NEXT ARGUES THAT THE COLLATERAL CONSEQUENCES

9    OF MR. TELLES'S OFFENSE CONDUCT, INCLUDING LIFETIME

10   REGISTRATION AS A SEX OFFENDER, REQUIREMENTS AND PROHIBITIONS

11   AS A CONVICTED FELON, REPUTATIONAL DAMAGE, LOSS OF INCOME, AND

12   THE STIGMA OF BEING A SEXUAL OFFENDER WARRANT A DOWNWARD

13   VARIANCE.  THE DEFENSE ALSO MAINTAINS THAT MR. TELLES, DUE TO

14   HIS STATUS AS A CONVICTED SEX OFFENDER AND DUE TO HIS ASD AND

15   BEHAVIORAL ISSUES, IS LIKELY TO BE A TARGET FOR ABUSE IN

16   PRISON.

17       THE COURT AGREES WITH THE GOVERNMENT'S POSITION.

18   MR. TELLES'S COMPLAINTS ABOUT THE COLLATERAL CONSEQUENCES OF

19   FEDERAL FELONY CONVICTIONS, AS WELL AS HIS CONCERN ABOUT BEING

20   VULNERABLE TO ABUSE IN PRISON, APPLY TO A BROAD CLASS OF

21   DEFENDANTS AND DO NOT WARRANT LENIENCY HERE.

22       THE DEFENSE AND THE GOVERNMENT BOTH RECOMMEND THAT

23   MR. TELLES BE CREDITED FOR TIME SERVED IN THE UNITED KINGDOM

24   FOR THE SAME UNDERLYING CONDUCT.  MR. TELLES SERVED 28 MONTHS

25   AND THREE DAYS BEFORE BEING DEPORTED TO THE UNITED STATES.

1    THE COURT AGREES, AND THE COURT WILL ACCORDINGLY SUBTRACT 28

2    MONTHS FROM ITS SENTENCING CALCULATION.  THE COURT WILL

3    SUBTRACT THE 28 MONTHS FROM MR. TELLES'S ULTIMATE SENTENCE

4    ONLY BECAUSE IT UNDERSTANDS THAT THE BUREAU OF PRISONS WILL

5    NOT CREDIT TIME SERVED IN FOREIGN JURISDICTIONS.

6        THE COURT HAS ALREADY MENTIONED MR. TELLES'S COMPLETE LACK

7    OF REMORSE.  IT BEARS REPEATING AGAIN.  DURING THE TRIAL

8    PROCESS, MR. TELLES HAS SHOWN CONCERN ONLY FOR HIMSELF, NOT

9    FOR THE EFFECTS HIS ABUSE HAS AND WILL HAVE CONTINUE TO HAVE

10   ON HIS VICTIM.  AS DISCUSSED HERE TODAY, HE WAS NOT KEEN EVEN

11   TO LET WELL ENOUGH ALONE:  DURING THE TRIAL HE CONTINUED TO

12   TRY TO MANIPULATE HER.

13       AND WE HEARD FROM THE GOVERNMENT, AND IT WAS UNDISPUTED,

14   THE PSYCHOLOGICAL AND PHYSIOLOGICAL IMPACT OF THE DEFENDANT'S

15   BEHAVIOR ON THE VICTIM IN TERMS OF PHYSICALLY AND

16   PSYCHOLOGICALLY EVEN RESULTING IN HER INABILITY TO COME HERE

17   AND EXERCISE HER RIGHT TO SPEAK TO THE COURT AS A VICTIM OF

18   THE ABUSE HERE.

19       SO TURNING TO THE OFFENSE ITSELF.  THE DETAILS OF THE

20   ABUSE ARE TRULY HORRIFYING TO THE COURT.  MR. TELLES ISOLATED

21   T.B. IN CHAT ROOMS AND QUICKLY ESCALATED THE SUBJECT MATTER TO

22   EXPLICIT SEXUAL TOPICS.  HE LIED ABOUT HIS AGE.  HE PRETENDED

23   TO BE A 14-YEAR-OLD BOY ONLY REVEALING HIS ACTUAL AGE AFTER

24   THE VICTIM WAS CONVINCED SHE WAS QUOTE-UNQUOTE "IN LOVE" WITH

25   HIM.  EVEN SENT A PICTURE OF HIS OWN SON AT 14 AND REPRESENTED

1    THAT TO BE A PICTURE OF HIMSELF.

2        HE FLEW TO THE UNITED KINGDOM KNOWING THAT T.B. WAS A

3    14-YEAR-OLD CHILD, AND, IN ESSENCE, KIDNAPPED HER FROM HER

4    PARENTS' HOME.

5        HE HID HER FROM HER PARENTS, EVEN THOUGH HE KNEW THEY WERE

6    ACTIVELY LOOKING FOR HER, FOR TWO DAYS.  HE ENCOURAGED HER TO

7    REFRAIN FROM CONTACTING HER PARENTS OR ANSWERING THEIR TEXTS.

8    MR. TELLES MOVED HER FROM ONE HOTEL TO THE OTHER, AND

9    INSTRUCTED AND DIRECTED HER TO BEHAVE IN A WAY THAT WOULD NOT

10   AROUSE NOTICE OR SUSPICION OR INTEREST OF THE PASSERSBY AND

11   HOTEL EMPLOYEES.  AND WE HEARD SUBSTANTIAL TESTIMONY ON THOSE

12   TOPICS HERE IN COURT.

13       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

14   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

15   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

16   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17   THAT HER COOPERATION WITH THE POLICE WOULD RESULT IN BODILY

18   HARM, EVEN DEATH FOR HIM, AND CONVINCED HER THAT SHE WOULD BE

19   PUNISHED FOR LYING ABOUT HER AGE ONLINE.

20       THE COURT MUST ALSO BE MINDFUL OF THE RELATIONSHIP BETWEEN

21   A GIVEN SENTENCE AND DETERRENCE, BOTH SPECIFIC DETERRENCE TO

22   MR. TELLES AND TO THE PUBLIC AT LARGE.  GIVEN THE

23   PERVASIVENESS OF SEXUAL ABUSE THAT ORIGINATES ON THE INTERNET,

24   THE COURT WOULD ALSO LIKE TO SEND A STRONG MESSAGE TO WOULD-BE

25   OFFENDERS AND PREDATORS THAT SUCH BEHAVIOR WILL RESULT IN

1    SEVERE PENALTIES.

2         IN DETERMINING THE APPROPRIATE SENTENCE, THE COURT MUST

3    CONSIDER BOTH THE ADVISORY GUIDELINES RANGE, WHICH THE COURT

4    HAS PREVIOUSLY ADDRESSED, AND THE STATUTORY FACTORS SET FORTH

5    IN 18 U.S.C. SECTION 3553(A).  THE COURT NOW SPECIFICALLY

6    ADDRESSES THESE FACTORS.

7         THE FIRST FACTOR IS THE NATURE AND CIRCUMSTANCES OF THE

8    OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

9    THIS WAS A HORRIBLE CRIME OF REPEATED SEXUAL ABUSE COMMITTED

10   AGAINST A VULNERABLE PERSON, A 14-YEAR-OLD CHILD.  IT WAS NOT

11   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

12   AN ELABORATE SCHEME TO MANIPULATE AND ISOLATE THE VICTIM.

13   MR. TELLES HAS SHOWN HIMSELF TO BE REMORSELESS AND CUNNING,

14   BOTH IN THE PERPETRATION OF THE OFFENSE AND IN THE AFTERMATH

15   OF ITS COMMISSION.

16        THE SECOND FACTOR IS TO REFLECT THE SERIOUSNESS OF THE

17   OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST

18   PUNISHMENT FOR THE OFFENSE; TO AFFORD ADEQUATE DETERRENCE TO

19   CRIMINAL CONDUCT; TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF

20   THE DEFENDANT; AND TO PROVIDE THE DEFENDANT WITH NEEDED

21   EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER

22   CORRECTIONAL TREATMENT.  THE COURT HAS EXPLAINED THE NEED FOR

23   GENERAL AND SPECIFIC DETERRENCE FOR SEXUAL ABUSE AND ABUSE

24   ORIGINATING ON THE INTERNET.  IT IS ALSO APPARENT THAT

25   MR. TELLES NEEDS LONG-TIME SEX-OFFENDER ORIENTED THERAPY AND

1  TREATMENT.

2      THE THIRD FACTOR THAT THE COURT MUST CONSIDER IS THE TYPE

3  OF SENTENCING AVAILABLE, OR SENTENCES AVAILABLE.  FOR THE

4  CRIMES FOR WHICH MR. TELLES WAS CONVICTED, PRISON TIME AND

5  THERAPY ARE BOTH AVAILABLE MODES OF SENTENCING, AND THE

6  COURT'S SENTENCING ENCOMPASSES EACH.

7      THE FOURTH FACTOR IS THE SENTENCING RANGE ESTABLISHED FOR

8  THE APPLICABLE CATEGORY OF OFFENSE.  THE COURT HAS ALREADY

9  MADE AND -- MADE A DETERMINATION AND EXPLAINED THE REASONS FOR

10  ITS CALCULATION OF OFFENSE LEVEL 41.

11      THE FIFTH FACTOR IS ANY PERTINENT POLICY STATEMENT ISSUED

12  BY THE SENTENCING COMMISSION.  THE COURT IS AWARE OF NONE.

13      THE SIXTH FACTOR IS THE NEED TO AVOID UNWARRANTED

14  SENTENCING DISPARITIES AMONG THE DEFENDANTS WITH

15  SIMILARLY-SITUATED RECORDS WHO HAVE BEEN FOUND GUILTY OF

16  SIMILAR CONDUCT.  THE COURT HAS TAKEN THE EXISTENCE OF OTHER

17  CASES INTO ACCOUNT IN TERMS OF ITS EXPERIENCE AND KNOWLEDGE

18  AND -- AND LONG EXPERIENCE ON THE BENCH OF THIS COURT.

19      AND THE EIGHTH FACTOR IS THE NEED TO PROVIDE RESTITUTION

20  TO ANY VICTIMS OF THE OFFENSE.  AS THE COURT WILL DISCUSS IN A

21  MOMENT, A SEPARATE RESTITUTION HEARING WILL BE HELD.

22      I WANT TO ADDRESS ONE POINT THAT MR. STEPANIAN MADE AT THE

23  END OF HIS PRESENTATION, HIS PASSIONATE STATEMENT ON BEHALF OF

24  THE DEFENDANT WHICH WAS THAT THE SENTENCE OF THE TYPE THAT THE

25  GOVERNMENT WAS RECOMMENDING OR THE GUIDELINES CONTEMPLATE IS

1   NOT -- IS TOO LONG AND INAPPROPRIATE FOR THE CONDUCT THAT THIS

2   DEFENDANT PERPETRATED IN THIS CASE.

3       IN OUR SYSTEM OF CRIMINAL JUSTICE, ESPECIALLY IN THE

4   FEDERAL SYSTEM, THE COURT DOES NOT MAKE MORAL JUDGMENTS ON

5   WHAT IS THE ABSOLUTE APPROPRIATE SENTENCE IN A CASE.  THE

6   COURT HAS GUIDELINES TO CONSIDER THAT ARE SUGGESTED BY THE

7   SENTENCING COMMISSION WHICH IN TURN WAS ESTABLISHED BY

8   CONGRESS.

9       THE COURT HAS CONGRESSIONAL MANDATES.  IN THIS CASE A

10  MANDATE OF A MINIMUM SENTENCE OF TEN YEARS AND A MAXIMUM

11  SENTENCE OF LIFE IMPRISONMENT.  THOSE ARE THE JUDGMENTS THAT

12  OUR LEGISLATURE AND SENTENCING COMMISSION HAS MADE ABOUT THE

13  SEVERITY OF THIS TYPE OF OFFENSE.  IT IS NOT THE COURT THAT IS

14  MAKING THIS JUDGMENT, NOR IS IT APPROPRIATE FOR THE COURT TO

15  SUBSTITUTE ITS JUDGMENT AS TO WHAT IS MORALLY APPROPRIATE.

16      THE COURT USES THE GUIDELINES, WHAT CONGRESS HAS STATED,

17  AND ITS KNOWLEDGE OF -- PROFOUND KNOWLEDGE OF THE CASE FACTS

18  HAVING SAT THROUGH THE TRIAL IN THIS CASE AND THE PRETRIAL AND

19  THE POST-TRIAL.

20      SO WITH ALL OF THOSE MATTERS IN MIND, THE COURT STATES

21  THAT IN THE ABSENCE OF THE 28 MONTHS OF CREDIT THAT THE

22  DEFENDANT IS DUE, THE SENTENCE IN THIS CASE WOULD BE A

23  SENTENCE OF IMPRISONMENT OF 330 MONTHS.

24      SO, PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS

25  THE JUDGMENT OF THE COURT THAT DAVID JOHN TELLES IS HEREBY

1    COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE

2    IMPRISONED FOR A TERM OF 302 MONTHS.  THIS TERM CONSISTS OF

3    302 MONTHS ON EACH OF COUNTS ONE THROUGH THREE, ALL COUNTS TO

4    RUN CONCURRENTLY.

5        UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT SHALL BE

6    PLACED ON SUPERVISED RELEASE FOR A TERM OF 15 YEARS.  THIS

7    TERM CONSISTS OF 15 YEARS ON EACH OF COUNTS ONE THROUGH THREE,

8    ALL SUCH TERMS TO RUN CONCURRENTLY.

9        WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU

10   OF PRISONS, THE DEFENDANT SHALL REPORT IN PERSON TO THE

11   PROBATION OFFICE IN THE DISTRICT TO WHICH THE DEFENDANT IS

12   RELEASED.

13       WHILE ON SUPERVISED RELEASE, THE DEFENDANT SHALL NOT

14   COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME, SHALL COMPLY

15   WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS

16   COURT, SHALL REFRAIN FROM ANY UNLAWFUL USE OF A CONTROLLED

17   SUBSTANCE, AND SUBMIT TO A DRUG TEST WITHIN 15 DAYS OF RELEASE

18   ON SUPERVISED RELEASE, AND TWO PERIODIC DRUG TESTS THEREAFTER,

19   AND SHALL COMPLY WITH THE FOLLOWING CONDITIONS:

20       1.  YOU MUST HAVE NO CONTACT WITH VICTIM T.B. UNLESS

21   OTHERWISE DIRECTED BY THE PROBATION OFFICER.

22       2.  YOU MUST PAY ANY RESTITUTION AND SPECIAL ASSESSMENT

23   THAT IS IMPOSED BY THIS JUDGMENT AND THAT REMAINS UNPAID AT

24   THE COMMENCEMENT OF THE TERM OF SUPERVISED RELEASE.

25       3.  YOU MUST PARTICIPATE IN A MENTAL HEALTH TREATMENT

1    PROGRAM AS DIRECTED BY THE PROBATION OFFICER.  YOU ARE TO PAY

2    PART OR ALL COST OF THIS TREATMENT AT AN AMOUNT NOT TO EXCEED

3    THE COST OF TREATMENT AS DEEMED APPROPRIATE BY THE PROBATION

4    OFFICER.  PAYMENTS MUST NEVER EXCEED THE TOTAL COST OF MENTAL

5    HEALTH COUNSELING.  THE ACTUAL CO-PAYMENT SCHEDULE MUST BE

6    DETERMINED BY THE PROBATION OFFICER.

7        4.  YOU MUST COOPERATE IN THE COLLECTION OF DNA AS

8    DIRECTED BY THE PROBATION OFFICER.

9        5.  YOU MUST SUBMIT YOUR PERSON, RESIDENCE, OFFICE,

10   VEHICLE, OR ANY PROPERTY UNDER YOUR CONTROL TO A SEARCH.  SUCH

11   A SEARCH MUST BE CONDUCTED BY A UNITED STATES PROBATION

12   OFFICER AT A REASONABLE TIME AND IN A REASONABLE MANNER BASED

13   UPON REASONABLE SUSPICION OF CONTRABAND OR EVIDENCE OF A

14   VIOLATION OF A CONDITION OF RELEASE.  FAILURE TO SUBMIT TO

15   SUCH A SEARCH MAY BE GROUNDS FOR REVOCATION; YOU MUST WARN ANY

16   RESIDENTS THAT THE PREMISES MAY BE SUBJECT TO SEARCHES.

17       6.  YOU MUST NOT POSSESS OR USE A COMPUTER WITHOUT THE

18   PRIOR APPROVAL OF THE PROBATION OFFICER.  THE TERM "COMPUTER"

19   INCLUDES ANY ELECTRONIC DEVICE CAPABLE OF ACCESSING THE

20   INTERNET OR PROCESSING OR STORING DATA AS DESCRIBED AT 18

21   U.S.C. SECTION 1030(E)(1), INCLUDING CELLPHONES AND ALL

22   PERIPHERAL DEVICES.

23       AS DIRECTED BY THE PROBATION OFFICER, YOU MUST ENROLL IN

24   THE PROBATION OFFICER'S COMPUTER AND INTERNET MONITORING

25   PROGRAM OR CIMP, AND MUST ABIDE BY THE REQUIREMENTS OF THE

1    CIMP PROGRAM AND THE ACCEPTABLE USE CONTRACT.

2        YOU MUST NOT ACCESS THE INTERNET OR ANY QUOTE "ONLINE

3    COMPUTER SERVICE" UNQUOTE AT ANY LOCATION, INCLUDING

4    EMPLOYMENT, WITHOUT THE PRIOR APPROVAL OF THE PROBATION

5    OFFICER.  THE TERM "ONLINE SERVICES" INCLUDES ANY INTERNET

6    SERVICE PROVIDER OR ANY PUBLIC OR PRIVATE COMPUTER NETWORK AS

7    DIRECTED BY THE PROBATION OFFICER.  YOU MUST WARN YOUR

8    EMPLOYER OF RESTRICTIONS TO YOUR COMPUTER USE.

9        9.  YOU MUST CONSENT TO THE PROBATION OFFICER CONDUCTING

10   PERIODIC UNANNOUNCED EXAMINATIONS OF YOUR COMPUTER EQUIPMENT

11   WHICH MAY INCLUDE RETRIEVAL AND COPYING OF ALL DATA FROM YOUR

12   COMPUTERS AND ANY PERIPHERAL DEVICE TO ENSURE COMPLIANCE WITH

13   THIS CONDITION AND REMOVAL OF ANY SUCH EQUIPMENT FOR THE

14   PURPOSE OF CONDUCTING MORE THOROUGH INSPECTION.  YOU MUST ALSO

15   CONSENT TO THE INSTALLATION OF ANY HARDWARE OR SOFTWARE AS

16   DIRECTED BY THE PROBATION OFFICER TO MONITOR YOUR INTERNET

17   USE.

18       YOU MUST NOT POSSESS ANY OR USE ANY DATA ENCRYPTION

19   TECHNIQUE ON ANY PROGRAM.

20       11.  YOU MUST NOT POSSESS IN ANY FOR MATERIALS DEPICTING

21   CHILD PORNOGRAPHY, CHILD EROTICA, OR NUDE OR SEXUAL DEPICTIONS

22   OF ANY CHILD OR ANY MATERIALS DESCRIBED IN 18 UNITED STATES

23   CODE SECTION 2256 SUBSECTION 8.

24       12.  YOU MUST NOT ACCESS, VIA THE INTERNET OR OTHERWISE,

25   ANY PORNOGRAPHY OR OTHER MATERIALS DEPICTING SEXUALLY EXPLICIT

1    CONDUCT AS DEFINED IN 18 U.S.C. SECTION 2256 SUBSECTION 2

2    WITHOUT THE PRIOR APPROVAL OF THE PROBATION OFFICER.

3        13.  YOU MUST NOT FREQUENT OR LOITER WITHIN 100 FEET OF

4    ANY LOCATION WHERE CHILDREN ARE LIKELY TO GATHER, OR HAVE

5    CONTACT WITH ANY CHILD UNDER THE AGE OF 18 UNLESS APPROVED BY

6    THE PROBATION OFFICER.  CHILDREN ARE LIKELY TO GATHER IN

7    LOCATIONS INCLUDING, BUT NOT LIMITED TO, PLAYGROUNDS, THEME

8    PARKS, PUBLIC SWIMMING POOLS, SCHOOLS, ARCADES, CHILDREN'S

9    MUSEUMS OR OTHER SPECIFIC LOCATIONS AS DESIGNATED BY THE

10   PROBATION OFFICER.  THIS PROVISION DOES NOT ENCOMPASS PERSONS

11   UNDER THE AGE OF 18, SUCH AS WAITERS, CASHIERS, TICKET

12   VENDORS, ET CETERA, WITH WHOM YOU MUST DEAL IN ORDER TO OBTAIN

13   ORDINARY AND USUAL COMMERCIAL SERVICES.

14       YOUR EMPLOYMENT MUST BE APPROVED BY THE PROBATION OFFICER,

15   AND ANY CHANGE IN EMPLOYMENT MUST BE PRE-APPROVED BY THE

16   PROBATION OFFICER.  YOU MUST SUBMIT THE NAME AND ADDRESS OF

17   THE PROPOSED EMPLOYER TO THE PROBATION OFFICER AT LEAST TEN

18   DAYS PRIOR TO ANY SCHEDULED CHANGE.

19       15.  YOUR RESIDENCE MUST BE APPROVED BY THE PROBATION

20   OFFICER, AND ANY CHANGE IN RESIDENCE MUST BE PRE-APPROVED BY

21   THE PROBATION OFFICER.  YOU MUST SUBMIT THE ADDRESS OF ANY

22   PROPOSED RESIDENCE TO THE PROBATION OFFICER AT LEAST TEN DAYS

23   PRIOR TO ANY SCHEDULED CHANGE.

24       16.  YOU MUST REGISTER WITH THE STATE SEX OFFENDER

25   REGISTRATION AGENCY AS REQUIRED BY STATE LAW.  YOU MUST

PROVIDE PROOF OF REGISTRATION TO THE PROBATION OFFICER WITHIN
THREE DAYS OF RELEASE FROM IMPRISONMENT/PLACEMENT ON
SUPERVISION.  IN ANY STATE THAT HAS ADOPTED THE REQUIREMENTS
OF THE SEXUAL OFFENDER REGISTRATION AND NOTIFICATION ACT, 42
UNITED STATES CODE SECTION 16901 AND FOLLOWING.  YOU MUST
COMPLY WITH ALL SUCH REQUIREMENTS AS DIRECTED BY THE PROBATION
OFFICER, THE BUREAU OF PRISONS, OR ANY STATE SEX OFFENDER
REGISTRATION AGENCY IN WHICH YOU RESIDE, ARE A STUDENT, OR
WERE CONVICTED OF A QUALIFYING OFFENSE.

17.  YOU MUST PARTICIPATE IN SEX OFFENDER SPECIFIC
TRAINING AS DIRECTED BY THE PROBATION OFFICER.  YOU ARE TO PAY
PART OR ALL OF THE COST OF THIS TREATMENT AT AN AMOUNT NOT TO
EXCEED THE COST OF TREATMENT AS DEEMED APPROPRIATE BY THE
PROBATION OFFICER.  THE ACTUAL CO-PAYMENT SCHEDULE MUST BE
DETERMINED BY THE PROBATION OFFICER.  THE PROBATION OFFICER
MAY RELEASE ALL PREVIOUS MENTAL HEALTH EVALUATIONS TO THE
TREATMENT PROVIDER.

18.  AS PART OF THE TREATMENT PROGRAM, YOU MUST SUBMIT TO
POLYGRAPH TESTING AS RECOMMENDED BY THE TREATMENT PROVIDER.
HOWEVER, YOU RETAIN YOUR FIFTH AMENDMENT RIGHT TO REFUSE TO
ANSWER ANY QUESTIONS ASKED DURING THE COURSE OF TREATMENT
ABSENT A GRANT OF USE AND DERIVATIVE USE IMMUNITY.

IT IS FURTHER ORDERED THAT THE DEFENDANT SHALL PAY TO THE
UNITED STATES A SPECIAL ASSESSMENT OF $300.  PAYMENT SHALL BE
MADE TO THE CLERK, U.S. DISTRICT COURT, 450 GOLDEN GATE

1    AVENUE, BOX 36060, SAN FRANCISCO, CALIFORNIA, 94102.

2        DURING IMPRISONMENT, PAYMENT OF CRIMINAL MONETARY

3    PAYMENTS -- PENALTIES ARE DUE AT THE RATE OF NOT LESS THAN $25

4    PER QUARTER, AND PAYMENTS SHALL BE MADE THROUGH THE BUREAU OF

5    PRISONS INMATE FINANCIAL RESPONSIBILITY PROGRAM.

6        THE COURT FINDS THE DEFENDANT DOES NOT HAVE THE ABILITY TO

7    PAY A FINE AND, THEREFORE, ORDERS THE IMPOSITION OF ANY FINE

8    WAIVED.

9        THE COURT -- IT IS FURTHER ORDERED THAT THE DEFENDANT

10   SHALL PAY RESTITUTION TO THE VICTIM T.B. IN AN AMOUNT TO BE

11   DETERMINED.  DURING IMPRISONMENT, PAYMENT OF RESTITUTION IS

12   DUE AT THE RATE OF NOT LESS THAN $25 PER QUARTER.  PAYMENT

13   SHALL BE THROUGH THE BUREAU OF PRISONS INMATE FINANCIAL

14   RESPONSIBILITY PROGRAM.

15       ONCE THE DEFENDANT IS ON SUPERVISED RELEASE, RESTITUTION

16   MUST BE PAID IN MONTHLY PAYMENTS OF NOT LESS THAN $100 OR AT

17   LEAST 10 PERCENT OF EARNINGS, WHICHEVER IS GREATER, TO

18   COMMENCE NO LATER THAN 60 DAYS FROM PLACEMENT ON SUPERVISION.

19   ANY ESTABLISHED PAYMENT PLAN DOES NOT PRECLUDE ENFORCEMENT

20   EFFORTS BY THE UNITED STATES ATTORNEY'S OFFICE IF THE

21   DEFENDANT HAS THE ABILITY TO PAY MORE THAN THE MINIMUM DUE.

22   THE RESTITUTION PAYMENTS SHALL BE MADE TO THE CLERK, U.S.

23   DISTRICT COURT, ATTENTION FINANCIAL UNIT, 450 GOLDEN GATE

24   AVENUE, BOX 36060, SAN FRANCISCO, CALIFORNIA 94102.

25       THE DEFENDANT'S FORFEITURE -- INTEREST IN THE FOLLOWING

1   PROPERTY SHALL BE FORFEITED TO THE UNITED STATES:  SAMSUNG

2   GALLERY NOTE III MOBILE PHONE MODEL SM-900V.IMEI 9900 0438

3   7650 504, FIC ID 3 -- I'M SORRY.  FCC ID 3 -- START AGAIN.

4   FCC ID A3LSMN900V.

5       THE GOVERNMENT HAS REQUESTED A SEPARATE RESTITUTION

6   HEARING IN 90 DAYS, AND THE COURT WILL DO SO NOW.

7       MS. OTTOLINI, LET'S SET A DATE.

8           **THE CLERK:**  DUE TO YOUR UNAVAILABILITY, IT WILL BE

9   SET FOR SEPTEMBER 24TH AT 1:00 P.M.

10          **THE COURT:**  ALL RIGHT.  THAT'S THE LAST DAY,

11  MS. OTTOLINI?

12          **THE CLERK:**  THE LAST DAY WOULD BE WHEN YOU ARE

13  UNAVAILABLE, YOUR HONOR.

14          **THE COURT:**  ALL RIGHT.  IS THAT ACCEPTABLE TO THE

15  GOVERNMENT?

16          **MS. MCCALL:**  YES, YOUR HONOR.

17          **THE COURT:**  MR. STEPANIAN?  MS. NAEGELE?

18          **MR. STEPANIAN:**  YES, YOUR HONOR.

19          **THE COURT:**  VERY WELL.  THANK YOU VERY MUCH.

20      DUE TO THE FACT -- YES.

21          **MS. MCCALL:**  I THINK YOUR HONOR BEGAN TO GIVE THE

22  APPELLATE RIGHTS?

23          **THE COURT:**  NO, IT'S NOT RELEVANT UNTIL JUDGMENT IS

24  COMPLETED UNTIL RESTITUTION IS HELD.

25      YES?

1        **MR. STEPANIAN:**  ONE MATTER, YOUR HONOR.  I DON'T KNOW

2    WHAT YOUR POLICY IS, BUT WE WOULD RECOMMEND THAT THE COURT

3    ORDER A JUDGMENT -- A COMMITMENT TO A CALIFORNIA INSTITUTION.

4        **THE COURT:**  GRANTED.

5        **MR. STEPANIAN:**  THANK YOU.

6        **THE COURT:**  I'M GOING TO RECOMMEND -- I DON'T HAVE

7    THE AUTHORITY TO ORDER THAT, BUT I WILL STRONGLY RECOMMEND IT

8    TO THE BUREAU OF PRISONS.

9        **MR. STEPANIAN:**  THANK YOU, YOUR HONOR.

10       **THE COURT:**  THANK YOU VERY MUCH, COUNSEL.

11            (PROCEEDINGS CONCLUDED AT 3:09 P.M.)

12

13

14               **CERTIFICATE OF REPORTER**

15       I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

16   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

17   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

18   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

19

20

21          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

22              TUESDAY, JUNE 25, 2019

23

24

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**